**Kunta K. GRAY, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A05–0505–PC–272.

Court of Appeals of Indiana.

Feb. 10, 2006.

Transfer Denied April 27, 2006.

Susan K. Carpenter, Public Defender of Indiana, Anne Murray Burgess, Deputy Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Kunta K. Gray appeals the denial of his petition for post-conviction relief. Under

the circumstances presented, we reverse the denial of Gray's petition for post-conviction relief and remand this case for a new trial.

## Issue

Gray raises three arguments, all of which involve the trial court's denial of the defense's motion to sever/bifurcate[1] a charge of unlawful possession of a firearm by a serious violent felon ("SVF") from the charges of murder, attempted murder, and robbery. Regarding this central issue, Gray asserts ineffective assistance of both appellate and trial counsel as well as a violation of his state and federal rights to fundamental due process. Finding the appellate ineffective assistance claim dispositive, we need not reach the other issues.

## Facts and Procedural History

We reiterate the facts as previously set forth in Gray's direct appeal.

[O]n November 16, 2000, Gray arranged to purchase a large quantity of marijuana from Greg Jones at an Indianapolis residence. Jones's friend, Avant, was at the house when Gray and an unidentified man arrived to buy the drugs. Jones retrieved a brown trash bag from his vehicle parked outside and then escorted Gray and the other man to the rear of the house, while Avant remained in the front living room area. A few minutes later, the unidentified man returned to the living room, hit Avant in the head with a handgun, and told him to get on the floor, stating, "[T]his is a robbery." Transcript at 56. Avant heard a number of gunshots from the back area of the home. Upon hearing the shots, the unidentified man stood and ran out of the house. Avant saw Gray stumble from the rear of the house and out the door. As Avant stood in or near the doorway, Gray pointed and

fired his handgun at Avant, but missed. Gray and the other man sped away in a vehicle. Jones, who had suffered a number of gunshot wounds, staggered to the front door. Avant called 911 and waited with Jones until emergency personnel arrived. Jones underwent surgery, but died twelve days later from the injuries.

The State charged Gray with felony murder, murder, robbery, attempted murder, unlawful possession of a firearm by a serious violent felon [ ], and carrying a handgun without a license as a C felony. The possession by a SVF count alleged as the prior violent felony a February 1997 B felony dealing in cocaine conviction. During trial, Gray stipulated that he had been convicted of a serious violent felony within the meaning of IC 35–47–4–5. [On March 5, 2002, the jury] convicted Gray as charged.

The State also charged Gray with being an habitual offender and alleged as the predicate offenses: (1) the aforementioned February 1997 dealing in cocaine conviction, and (2) a December 1998 C felony carrying a handgun without a license conviction. Gray waived a jury trial on the habitual offender phase, and, after a hearing, the trial court adjudged Gray an habitual offender.

At [Gray's April 12, 2002] sentencing, the trial court merged the murder and robbery convictions with the felony murder conviction, and merged the felony handgun conviction with the possession by a SVF conviction. It sentenced Gray to sixty years for the felony murder, enhanced by thirty years for the habitual offender status, forty years for the attempted murder conviction, and twenty years for the possession by a SVF conviction. The trial court ordered the

---

1. Throughout the proceedings, "sever" has been used interchangeably with "bifurcate."

sentences to run concurrently, for a total executed sentence of ninety years.

*Gray v. State,* 786 N.E.2d 804, 805–06 (Ind.Ct.App.2003) (footnote and parenthetical omitted), *trans. denied.* A panel of this court affirmed his convictions and sentence. *Id.* at 808.

On November 19, 2003, Gray filed a pro se petition for post-conviction relief. PC–App. at 31.[2] Almost one year later, Gray filed an amended petition for post-conviction relief, this one with counsel. *Id.* at 48. Following a post-conviction hearing, Gray's petition was denied in an order containing findings and conclusions. *Id.* at 94–108. Further facts shall be provided as necessary.

### Discussion and Decision

#### Standard of Review

 The well-settled standard for reviewing the denial of post-conviction relief follows.

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl* [*v. State* ], 729 N.E.2d [102, 106 (Ind.2000) ] (quotation omitted). In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses.

*Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004) (some citations omitted). Moreover,

Post-conviction procedures do not afford a petitioner with a "super-appeal." *See, e.g., Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001). Rather, subsequent collateral challenges must be based on grounds enumerated in Post–Conviction Rule 1. If an issue was known and available on direct appeal, but not raised, it is procedurally defaulted as a basis for relief in subsequent proceedings. *See, e.g., Rouster v. State,* 705 N.E.2d 999, 1003 (Ind.1999). If an issue was raised on appeal, but decided adversely, it is res judicata. *Id.* If the issue is not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post-conviction proceeding, but as a general rule, "most free-standing claims of error are not available in a postconviction proceeding because of the doctrines of waiver and res judicata."

*Williams v. State,* 808 N.E.2d 652, 659 (Ind.2004).

#### Effective Assistance of Appellate Counsel

Gray first contends that his appellate counsel rendered deficient performance

---

**2.** Gray submitted separately bound and paginated transcripts, exhibit, and appendices volumes for his trial and his post-conviction proceedings. We cite to the post-conviction volumes as PC–Tr., PC–Ex., and PC–App. and to the trial volumes as T–Tr., T–Ex., and T–App.

when she failed to raise the denial of the motion to sever a charge of unlawful possession of a firearm by a SVF from the charges of murder, attempted murder, and robbery. Gray asserts that appellate counsel erroneously concluded that the issue was not preserved. Gray further claims that the severance issue was "clearly stronger" than the issues raised and would likely have led to a reversal. Appellant's Br. at 9.

■ To prevail on a claim of ineffective assistance of appellate counsel, the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Ben–Yisrayl*, 729 N.E.2d at 106. Prejudice will be found to exist when "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." *Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193–95 (Ind.1997).

■ Gray's claim of appellate counsel's ineffectiveness is based on the second category. Hence, we employ the following two-part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake*, 753 N.E.2d at 605–06. As the reviewing court, we

must be "particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Id.* at 605. "Moreover, appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law." *Trueblood v. State*, 715 N.E.2d 1242, 1258 (Ind.1999).

■ Thus, we analyze whether Gray has demonstrated that appellate counsel's failure to raise the severance issue was "unquestionably unreasonable" in light of the facts of the case and the precedent available when the decision not to raise the issue was made. *See Concepcion v. State*, 796 N.E.2d 1256, 1259 (Ind.Ct.App.2003), *trans. denied.* Stated slightly differently, has Gray established that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision? *See Imel v. State*, 830 N.E.2d 913, 917–18 (Ind. Ct.App.2005), *trans. denied.*

On March 4, 2002, prior to voir dire, Gray's counsel moved to sever the possession by a SVF count from the four other counts, noting that the court had discretion[3] to do so where concerns of fairness and undue prejudice arise. PC–Ex. 5 at 4 (transcript of jury trial). Defense counsel was concerned about the ability of a defendant to receive a fair trial on the murder and attempted murder charges if the jury

---

**3.** The discretion is granted by statute, specifically:

the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;
(2) the complexity of the evidence to be offered; and
(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Ind.Code § 35–34–1–11(a).

was informed that the defendant is a "serious violent felon." PC–Tr. at 25–26; T–Tr. at 5. Defense counsel argued that this severance issue was "undecided" and "unclear," and if decided adversely to Gray, would be "litigated for appeal." PC–Ex. 5 at 6; T–Tr. at 6. After hearing argument on the motion, the trial court took the motion under advisement and received a memorandum on the issue. A law clerk prepared the one-page memorandum, which briefly discussed *Spearman v. State*, 744 N.E.2d 545 (Ind.Ct.App.2001), *trans. denied*, *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), and Indiana Evidence Rule 403, and advised, "if Gray offered to stipulate that he is a felon," the trial court "could either bifurcate the proceedings or not allow the prosecutor to refer" to Gray's record during the jury trial. PC–App. at 30.

Following the first round of voir dire, the trial court denied Gray's motion to sever, explaining:

> I don't think there's any legal authority that will allow the Court to do that. And there's also no legal authority for bifurcation. What these cases tend to say is if there are ways, the Court can minimize the prejudice with instructions, and the Court does admit that I think it is highly prejudicial for the jury to know that the prior serious violent felon is the offense of dealing in cocaine. Especially when this is a drug related—allegedly drug related murder. One possible solution is if [Gray] would stipulate to the fact that his—that he has a prior convic-

tion that's been deemed a serious violent felon[y] under Indiana Statute.

PC–Ex. 5 at 7–8; T–Tr. at 7–8.

After discussion regarding the wording of the proposed stipulation and limiting instruction,[4] voir dire was completed. Defense counsel then stated that Gray was willing to accept "the proposal that he would stipulate that he has a conviction that will qualify as a Serious Violent Felony under the statute." T–Tr. at 12–14. Defense counsel agreed to the stipulation in part so the State would not introduce evidence that Gray had been convicted of a drug offense. PC–Tr. at 29–30. When later asked if he intended to waive the severance issue by stipulating, defense counsel responded:

> Well, given the state of record, I felt I'd made the record clear. And I thought it was still a viable—it was still there. Although, I think because of the *Spearman* issue, I knew that the weight was against me at that time. So, I—given the course of what was going on that day, I was trying to win a trial, and that seemed like the best alternative to me at that time to try to win the trial that day. *I did believe, though, that I had made a record, and I felt like the record would demonstrate why we stipulated, and that it was only because we had lost the first two motions.* Had we—you know, the reality is is I did not tell him that you—in order for you to preserve this issue, you will have to refuse to stipulate, and just go along

---

4. The stipulation and limiting instruction read:

> The defendant stipulates that he has previously been convicted as a serious violent felon. Evidence that the Defendant has previously been convicted of an offense defined as a serious violent felony may not be considered as substantive evidence as to the guilt or innocence of the Defendant on

Counts One, Two, Three, Four and Six. Such evidence is offered only to prove the Defendant's status with respect to Count Five. When the Prosecuting Attorney and the Attorney for the Defendant stipulate or agree to the existence of a certain fact, you should accept such stipulated or agreed facts as conclusively proved.

PC–Ex. 5 at 17–18.

with the current—he—he never got that advice from me.

*Id.* at 30–31 (emphasis added).

In *Spearman v. State,* 744 N.E.2d 545 (Ind.Ct.App.2001), *trans. denied,* the case referenced by Gray's trial counsel and in the law clerk's memorandum, we held that a defendant who was tried *solely* for the crime of unlawful possession of a firearm by a SVF was not entitled to have the proceedings bifurcated in such a way that the jury would not hear of his prior felony conviction before it determined whether he was in possession of a firearm. *Id.* at 547–49. This was because the evidence of the prior conviction is an essential element of the crime. *Id.* at 548.

When it came time for Gray's appellate counsel to choose issues for appeal, she reviewed the Pre–Appeal Form, on which Gray's trial counsel had written under "potential issues for appeal" only the following: "Gray was also charged with unlawful possession of a firearm by a serious violent felon. The court denied request for severance and to bifurcate so jury heard about previous felony convictions during murder trial." PC–Ex. 8. She then examined a portion of the record[5] and corresponded with trial counsel. PC–Tr. at 14–19, 21. According to appellate counsel, "bifurcation was a big issue" among the defense bar when the SVF statute[6] was passed in 1999. *Id.* at 15. However, apparently believing that the severance issue was not adequately preserved and/or that she would "have problems with the stipulation," Gray's appellate counsel decided not to argue that issue. *Id.* at 17, 19. Instead, she raised the following two issues in Gray's appellant's brief, which was filed November 8, 2002:[7]

I. Whether the trial court's enhancement of his felony murder sentence based upon the habitual offender finding was erroneous because a prior dealing in cocaine conviction was used to establish both the habitual offender status and that he was a serious violent felon.

II. Whether Tracy Avant's testimony that Gray shot at him was sufficient to establish that he attempted to murder Avant.

*Gray,* 786 N.E.2d at 805.

On April 22, 2003, in a five-page opinion, we unanimously affirmed. *Id.,* 786 N.E.2d 804. In addressing the first issue raised, we found that our decision in *Anderson v. State,* 774 N.E.2d 906 (Ind.Ct.App.2002),[8]

---

5. The part that she examined did not contain the voir dire during which the ruling on the severance motion was made. PC–Tr. at 16.

6. The SVF statute, which became effective July 1, 1999, provides: "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." Ind.Code § 35–47–4–5(c). The SVF statute defines "serious violent felon" as a person who has been convicted of:
 (1) committing a serious violent felony in:
 (A) Indiana; or
 (B) any other jurisdiction in which the elements of the crime for which the conviction was entered are substantially similar to the elements of a serious violent felony; or
 (2) attempting to commit or conspiring to commit a serious violent felony in:

(A) Indiana as provided under IC 35–41–5–1 or IC 35–41–5–2; or
(B) any other jurisdiction in which the elements of the crime for which the conviction was entered are substantially similar to the elements of attempting to commit or conspiring to commit a serious violent felony. Ind.Code § 35–47–4–5(a). The section lists twenty-six "serious violent felonies," including: murder, voluntary manslaughter, reckless homicide, battery, kidnapping, rape, child molesting, and arson. Ind.Code § 35–47–4–5(b).

7. The State filed its appellee's brief on January 13, 2003.

8. *Anderson* was issued on July 10, 2002, prior to the filing of Gray's Appellant's Brief for his direct appeal.

"was dispositive." *Id.* at 806. In analyzing the second issue, we noted that our supreme court "has repeatedly held that the requisite intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm[,]" reiterated that we cannot second-guess jury credibility determinations, and held that sufficient evidence existed to sustain Gray's attempted murder conviction. *Gray*, 786 N.E.2d at 807–08. Our supreme court has noted: "Courts of review rarely reverse a jury's guilty verdict on sufficiency of evidence grounds[.]" *Fisher*, 810 N.E.2d at 677. Gray's direct appeal was yet another example of this reality.

As should be evident, neither issue raised in Gray's direct appeal was particularly strong or groundbreaking.[9] Conversely, the issue of severance/bifurcation of an SVF count from other counts was truly undecided during the time of Gray's trial and appeal. Indeed, just four months after Gray's direct appeal was decided, we reversed and remanded a case involving an SVF count and another count. *See Hines v. State*, 794 N.E.2d 469 (Ind.Ct.App. Aug.27, 2003), *opin. adopted by* 801 N.E.2d 634 (Ind.2004). In *Hines*, we held that the trial court abused its discretion by denying a motion for a "bifurcated trial because the prejudice associated with the prior-conviction evidence, which was necessary to prove the offense of Unlawful Possession of a Firearm by a Serious Violent Felon, substantially outweighed its probative value on the *robbery* charge." *Id.* at 474 (emphasis added).

Our supreme court granted transfer of *Hines* on November 5, 2003, and issued an opinion on January 21, 2004, adopting and incorporating by reference this Court's

opinion. *Hines v. State*, 801 N.E.2d 634, 635 (Ind.2004). In doing so, our supreme court deemed the following portion of our decision worthy of particular mention:

> [Defendant]'s status as a serious violent felon is not an essential element of the Robbery offense. Indeed, such status is not even probative of whether [Defendant] committed Robbery while armed with a deadly weapon. Thus, unlike the situation presented in *Spearman*, where bifurcation was impractical, if not impossible, because the defendant was tried *solely* for the offense of Unlawful Possession of a Firearm by a Serious Violent Felon, in the present case, it would have been feasible for the trial court to bifurcate the Robbery charge and the Unlawful Possession of a Firearm by a Serious Violent Felon charge.

*Id.* at 635 (quoting *Hines*, 794 N.E.2d at 472) (emphasis added). While we do not expect appellate counsel to anticipate changes in the law, counsel should recognize when an issue is undecided. *See Fisher*, 810 N.E.2d at 679 (concluding, "precisely because the law in this area was unsettled and in a state of flux at the time of Fisher's trial and appeal the issue ... was both significant and obvious as well as clearly stronger than the issues raised."); *see also Hines*, 794 N.E.2d at 472 (noting this was "an issue of first impression").

To summarize, prior to voir dire, Gray's trial counsel recognized the very real potential for unfair prejudice that Gray could suffer if the jury that was to determine, *inter alia*, whether he committed murder or attempted murder was informed of his SVF status. Accordingly, he moved for severance/bifurcation of the possession by

**9.** Our supreme court denied transfer of Gray's case on June 25, 2003, just one month after he filed his petition seeking transfer.

a SVF count from the other counts, argued that the issue was at that point undecided and unclear, and noted that an appeal would be brought if the motion was denied. The trial court denied the severance/bifurcation motion, but then offered Gray the option to stipulate to his SVF status. Only after he had lost on his severance/bifurcation motion did Gray agree to stipulate to his status; the defense's rationale at that point was that the stipulation could at least prevent the jury, who was to determine if he had murdered a drug dealer, from hearing that Gray's prior serious violent felony was for dealing drugs. The State characterizes this as a "strategic decision" that failed to preserve the severance/bifurcation issue. Appellee's Br. at 14. We disagree.

As trial counsel's oral argument for his motion made clear, Gray viewed severance/bifurcation as necessary to prevent undue prejudice and unfairness. Gray's agreement to stipulate after losing on his motion to sever/bifurcate was a Hobson's choice,[10] that is, an apparently free choice that is really no choice at all. We would not describe Gray's stipulation under these circumstances as a "decision" to waive the severance/bifurcation issue. It is clear to us that Gray's trial counsel was not conceding the severance/bifurcation issue, but was simply abiding by the trial court's

denial of his motions and attempting damage control.[11] The fact that the one and only issue Gray's trial counsel listed on the Pre–Appeal Form was the severance/bifurcation issue only serves to bolster our conclusion that trial counsel was not waiving the issue.

Although trial counsel preserved the severance/bifurcation issue, appellate counsel failed to raise the issue. She failed to do so despite the Pre–Appeal Form's clear directive, without having reviewed the relevant portion of the transcript, notwithstanding the fact that bifurcation was, in her words a "big issue" at that time, shortly after the SVF statute was enacted, and despite the fact that *Spearman* addressed a different issue. She chose instead two issues [12] with "little chance of success." *Fisher*, 810 N.E.2d at 677. Our extended examination of the circumstances leads us to the conclusion that Gray has demonstrated deficient performance. *See Carew v. State*, 817 N.E.2d 281, 288 (Ind.Ct.App. 2004) (concluding that "[i]n light of the precedent available at the time of . . . direct appeal," trial counsel's "extraordinary efforts to preserve this issue[,]" and the coordination of Carew's defense with that of other defendant, appellate counsel rendered deficient performance by not chal-

---

**10.** In his poem entitled "England's Reformation," penned in 1688, Thomas Ward wrote: "Where to elect there is but one, 'tis Hobson's choice—take that or none.'" The phrase originates from Thomas Hobson (1544–1630), a stable manager in Cambridge, England, who rented horses to travelers. Realizing that certain horses were being requested repeatedly and being overworked, he began a rotating system, placing the well-rested horses near the stable door and refusing to let out any horse except in its proper turn. He offered customers the choice of taking the horse in the stall nearest the door or taking none at all. *http://en.wikipedia.org/wiki/Hobson's_choice* (last visited January 19, 2006).

*See also* THE AMERICAN HERITAGE DICTIONARY 615 (2d ed.1991).

**11.** Although our resolution of the appellate ineffectiveness claim dictates that we need not address the issue of trial counsel ineffectiveness, we would be disinclined to conclude that trial counsel rendered deficient performance.

**12.** We also note that this was not a case where numerous issues were raised and the addition of one more would somehow have diminished the other two arguments raised—especially when the omitted issue was undecided.

lenging trial court's exclusion of certain testimony), *trans. denied.*

Turning to the second prong of the ineffective assistance analysis, we reiterate that to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See id.* àt 286, 288; *see also Imel,* 830 N.E.2d at 917.[13] The State acknowledges *Hines* and concedes that had appellate counsel raised the severance/bifurcation issue, "it is possible that the result of [Gray's] appeal would have been different[.]" Appellee's Br. at 12. The State attempts to distinguish *Hines* from the present case by contending that our supreme court placed "heavy emphasis" on the State's rejection of the defendant's offer to stipulate to the prior conviction in *Hines. Id.* We are not convinced.

Our supreme court did agree that either the prosecutor should have accepted Hines' offer to stipulate that he was a SVF in possession of a handgun if the jury found him guilty of robbery, or the trial court should have bifurcated the trial. *Hines,* 801 N.E.2d at 635–36 (citing favorably to *Sams v. State,* 688 N.E.2d 1323, 1326 (Ind.Ct.App.1997), *trans. denied,* and *Old Chief,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574). However, the first point highlighted by our supreme court was that the denial of the motion to bifurcate the SVF count from the robbery count was an abuse of discretion for a variety of reasons. *Id.* at 635 (quoting *Hines,* 794 N.E.2d at

472)). Moreover, the stipulation in *Hines* was materially different and had a distinctly different effect than the stipulation in Gray's case. Hines offered to stipulate that he was a serious violent felon *if* he was found guilty of robbery. Had the State accepted that stipulation, the jury never would have heard about Hines' prior felony conviction when determining guilt on the robbery charge. In contrast, the stipulation in Gray's case paved the way for the jury to hear several references [14] to Gray as a SVF throughout his trial for murder, attempted murder, etc.

We cannot agree that the evidence presented against Gray was "very strong." *See* Appellee's Br. at 16. The evidence consisted primarily of the testimony of Tracy Avant and that of Andrew White. Avant's identification testimony was called into question when he was unable to identify the same person in a photo array more than once and when police/the prosecutor opted not to charge a person who Avant was "100%" certain was the second perpetrator. T–Tr. at 70, 71–72, 176. Also, Avant did not pick Gray as the suspect until the second time that he was shown a photo array. *Id.* Avant stated that he had been hit on the head with a gun, had a pillow placed over him, and admitted that he was dazed by the incident. *Id.* at 56, 59–60. The victim's sister testified that upon arriving at the scene, she immediately asked Avant if he had shot her brother; according to her testimony, Avant never replied. *Id.* at 49. White's testimony con-

---

**13.** *Imel,* like *Spearman,* does not address Gray's issue inasmuch as Imel was tried and convicted not on multiple counts, but on only one count: unlawful possession of a firearm by a SVF. *Imel,* 830 N.E.2d at 915. That said, we echo the concerns raised by Judge Barnes in his opinion concurring in the *Imel* result.

**14.** The SVF references occurred during the preliminary instructions when the information was read, when the definition of unlawful possession of a firearm by a SVF was given, when the elements of the offense were provided, when the stipulation was read, when the list of possible predicate offenses for a SVF were given, in the State's opening argument, and in the State's closing argument.

sisted of relaying a conversation that he claimed to have had with Gray while they were in lockup together. *Id.* at 212–18. No murder weapon was recovered. There were problems with the investigation, including problems with the collection of evidence.

Thus, rather than being presented with overwhelming evidence that Gray had committed the charged violent crimes, the jury had to make some serious credibility determinations. In performing their credibility determination, the jury was informed that Gray was a SVF and was left to speculate as to which violent felony or felonies Gray had already committed. Consequently, we can easily envision the jury's determinations being tainted by the references to Gray as a SVF—regardless of an instruction directing jurors not to make the forbidden inference. We believe that had Gray's appellate counsel raised the severance/bifurcation issue, it is reasonably probable that reversal would have ensued, and *Hines* simply would have followed *Gray. See Fisher,* 810 N.E.2d at 679 ("[H]ad counsel raised the issue, the analysis now widely referred to as the '*Wright'* test could well have been known as the '*Fisher* test'"; referring to *Wright v. State,* 658 N.E.2d 563 (Ind.1995)). Accordingly, the prejudice prong is met.

### Conclusion

In light of the multiple serious violent charges faced by Gray, we conclude that Gray's appellate counsel's failure to raise the severance/bifurcation issue, which was clearly set out by trial counsel and not waived by the stipulation, amounted to deficient performance. This deficient performance prejudiced Gray because had the issue been raised on direct appeal, he very likely would have received a new trial. Although we rarely find that appellate counsel is ineffective, based on the circumstances present here, we are convinced that this is one such case. The post-conviction court's finding to the contrary leaves us with a definite and firm conviction that a mistake has been made. We must therefore reverse the denial of Gray's petition for post-conviction relief and remand this case for a new trial. *See id.* at 680–81 (reversing post-conviction court's judgment where appellate counsel's "failure to present ... claim on direct appeal of murder conviction amounted to ineffective assistance.").

Reversed and remanded

FRIEDLANDER, J., and MAY, J., concur.