Mario McCANN, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A05–0603–PC–157.

Court of Appeals of Indiana.

Sept. 29, 2006.

Susan K. Carpenter, Public Defender of Indiana, Linda G. Nicholson, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, J.T. WHITEHEAD, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Mario McCann appeals the denial of his petition for post-conviction relief. We affirm in part, reverse in part, and remand.

### Issues

We restate McCann's issues as follows:

I. Whether trial counsel was ineffective in failing to object to the trial court's instruction on attempted murder and tender a correct instruction; and

II. Whether appellate counsel was ineffective in failing to raise a double jeopardy argument regarding McCann's convictions and sentences for attempted murder and class A felony burglary.

### Facts and Procedural History

We recite the facts most favorable to the judgment as outlined in McCann's direct appeal to this Court:

On the evening of August 2, 1997, McCann approached and talked to A.L. ("A.L.") and Anthony Dozier ("Dozier") at their home at 38th Street and College Avenue in Indianapolis. After McCann left, A.L. went upstairs and fell asleep in her bed with the television on. When A.L. awoke McCann was in her bedroom. McCann tried to pull her covers off and told her he had a gun that he would use if she was not quiet. Additionally, McCann touched A.L.'s breasts and stated "shut up, it [won't] take very long, and then [I'll] leave [you] alone." A.L. viewed McCann's face for approximately ten minutes. A.L.'s boyfriend, Dozier, then entered the bedroom, saw McCann, and began to struggle with McCann. During this struggle, McCann shot Dozier in the chest. McCann then left through the bedroom window. Dozier viewed McCann's face for approximately five minutes. An upstairs neighbor called the police.

Detective Lawrence Cahill ("Detective Cahill"), of the Indianapolis Police Department, responded to the police radio call, and conducted the investigation of the crime. A.L. described McCann as a young black male approximately five feet ten inches in height, and other residents of the apartment and neighbors indicated to Detective Cahill that the suspect's first name was Mario. From a police database, Detective Cahill printed

out photographs comprised of black males named Mario. Then, after eliminating pictures from suspects that were in the database more than once and removing names, Detective Cahill presented a thirty-two-picture array to A.L. and Dozier. Two of the pictures within this array were of McCann. Both Dozier and A.L. identified McCann as the person who attempted to rape A.L. and shot Dozier. Thereafter, McCann was arrested and charged for Attempted Murder, Burglary, and Attempted Rape.

Prior to trial, McCann moved to suppress A.L.'s and Dozier's in-court identifications of him. McCann argued that the out of court identification procedures were unduly suggestive. The trial court denied this motion. During trial, McCann renewed his objections to A.L.'s and Dozier's in-court identifications. These objections were denied.

[On February 9, 1999,] McCann was found guilty on all three charged offenses. [At a sentencing hearing on March 8, 1999, the] trial court cited four aggravating circumstances and no mitigating circumstances. The trial court sentenced McCann to fifty years for each offense, with the Attempted Murder conviction and Burglary conviction to run consecutively and the Attempted Rape conviction to run concurrently. McCann was sentenced to a total executed sentence of one hundred years.

*McCann v. State*, 742 N.E.2d 998, 1001–02 (Ind.Ct.App.2001) (*"McCann I "*), *aff'd in part and vacated in part by* 749 N.E.2d 1116 (Ind.2001) (*"McCann II "*). Another panel of this Court affirmed McCann's convictions but remanded for resentencing based on the trial court's finding of two improper aggravators. *McCann I,* 742 N.E.2d at 1007–08. On transfer, our supreme court held that one of those aggravators was proper and affirmed McCann's

convictions and sentence. *McCann II,* 749 N.E.2d at 1120–21.

On September 18, 2002, McCann filed pro se an amended petition for post-conviction relief. The State filed its answer on October 15, 2002. On August 29, 2005, McCann filed by counsel a motion to amend his petition, which the post-conviction court granted three days later. The State filed its response on September 7, 2005. On October 4, 2005, the post-conviction court held a hearing on McCann's petition. On January 31, 2006, the post-conviction court denied McCann's petition. McCann now appeals.

## Discussion and Decision

### *Standard of Review*

In addressing McCann's allegations of error, we employ the following standard of review:

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. The post-conviction court is the

sole judge of the weight of the evidence and the credibility of witnesses.

*Walker v. State,* 843 N.E.2d 50, 56 (Ind.Ct. App.2006) (quotation marks and some citations omitted), *trans. denied.*

### I. Attempted Murder Instruction

 McCann first contends that trial counsel was ineffective in failing to object to the trial court's attempted murder instruction and tender a correct instruction.[1] Regarding ineffectiveness claims, our supreme court has stated,

A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). First, the defendant must show that counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability

sufficient to undermine confidence in the outcome. *Id.*

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689, 104 S.Ct. 2052. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. 2052. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed.

*Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001) (quotation marks, alterations, and some citations omitted), cert. denied (2002).

Without objection, the trial court gave the following instruction to the jury:

### Attempt Murder

A person attempts to commit a crime when he knowingly engages in conduct that constitutes a substantial step toward the commission of the crime.

The crime of Murder is defined by statute as follows:

---

1. In addressing the propriety of the attempted murder instruction, the post-conviction court stated that McCann "did not raise this issue on direct appeal. Since the issue was available then, it is now waived." Appellant's App. at 113. While it is true that McCann waived any freestanding claim of error by failing to raise the issue on direct appeal, he may nevertheless challenge the propriety of the instruction in the context of an ineffective assistance of counsel claim. *See Williamson v. State,* 798 N.E.2d 450, 452–53 (Ind.Ct.App. 2003) (addressing appellant's double jeopardy claim), *trans. denied* (2004).

A person who knowingly kills another human being commits Murder. The elements of this offense are that the defendant must:

1. Intentionally

2. Engage in conduct that constituted a substantial step toward the commission of

3. Knowingly or intentionally killing another human being

The defendant must have had the specific intent to commit Murder in order to be found guilty of Attempt Murder, a Class A Felony. Intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death.

Trial Record at 126 (capitalization altered).

■ "The Indiana Supreme Court has recognized the special need to instruct juries precisely as to the correct level of culpability for attempted murder because of the stringent penalties for that charge and the inherent ambiguity often involved in its proof." *Specht v. State*, 838 N.E.2d 1081, 1089 (Ind.Ct.App.2005), *trans. denied* (2006). McCann observes that our supreme court has long held that an attempted murder instruction "must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991). Stated differently,

An instruction that purports to set forth the elements required for an attempted murder conviction must ... specifically state that the jury is required to find that the defendant intended to kill the victim. Instructing the jury with a list of elements which suggests that it may convict on a lesser mens rea, such as "knowingly," constitutes error.

*Beasley v. State*, 643 N.E.2d 346, 348 (Ind. 1994) (citing, *inter alia*, *Spradlin*, 569 N.E.2d at 950–51); *compare* Ind.Code § 35–41–2–2(a) ("A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.") *with* Ind.Code § 35–41–2–2(b) ("A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."). McCann correctly asserts that the attempted murder instruction given at trial is erroneous and further contends that his trial counsel was ineffective in failing to object thereto and tender a correct instruction.[2]

We disagree. Although McCann's counsel might well have performed deficiently in failing to object to the attempted murder instruction in light of the then-existing precedent on the subject, we conclude that McCann has not demonstrated that he suffered prejudice as a result. In other words, he has not shown that there is a reasonable probability that, but for counsel's failure to object to the instruction and tender a correct one, the result of his trial would have been different. *See Timberlake*, 753 N.E.2d at 603. McCann asserts that "[w]hether the gun discharged accidentally or with the specific intent to kill was a key question for the jury to resolve on the attempted murder count." Appellant's Br. at 8–9.[3] Obviously, the jury

---

2. We note that prior to McCann's trial, our supreme court stated that "the tender of a proposed alternative instruction is not necessarily required to preserve the claim of error." *Scisney v. State*, 701 N.E.2d 847, 849 (Ind.1998).

3. Although McCann's counsel raised intent as an issue at trial, McCann himself twice interrupted the proceedings to assert that someone else had committed the charged crimes. *See, e.g.,* Trial Record at 371 (during A.L.'s testimony: "Hey, I feel sympathy but it wasn't me. I feel sympathy, it wasn't me."); *id.* at

rejected any suggestion that the shooting was accidental; otherwise, it would have acquitted McCann of attempted murder and the lesser included offenses of aggravated battery and battery. Also, McCann fired two shots during his encounter with Dozier, which militates against a finding that the shooting was accidental.

Moreover, as the attempted murder instruction suggests, "[t]he intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury." *Webster v. State,* 699 N.E.2d 266, 268 (Ind.1998). In *Booker v. State,* 741 N.E.2d 748 (Ind.Ct.App.2000), in which the appellant challenged an attempted murder instruction on direct appeal, another panel of this Court stated,

> To be sure, the use of a deadly weapon in a manner likely to cause death or serious bodily injury is not, in and of itself, equivalent to a conscious objective to kill. The use of a deadly weapon in such a manner may very well establish only that the defendant acted with an awareness of a high probability of killing someone, i.e., knowingly. *See Storey v. State* (1990) Ind., 552 N.E.2d 477, 480 ("The use of a deadly weapon in a manner likely to cause death or great bodily harm permits the jury to infer the defendant's knowledge that he was killing another.") Therefore, when it is said, as our Supreme Court did in *Bethel v. State* (2000) Ind., 730 N.E.2d 1242, 1245, that the intent to commit attempted murder may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury, it may only be read as holding that the trier of

fact in that case could infer a conscious objective to kill; otherwise it would run counter to the *Spradlin* rule. Subjective intent is difficult to prove, and the court may have been saying that as an evidentiary matter, the trier of fact may infer that the defendant acted with the conscious objective to kill from the circumstances surrounding the deliberate use of a deadly weapon in a manner likely to cause death or serious bodily injury; however, the use of a deadly weapon in such a manner does not necessarily permit such a conclusion.

*Id.* at 756. That said, we note that when Dozier found McCann lying in bed with A.L., he jumped on McCann, threw a few punches, and grabbed his arm. At that point, Dozier was "face to face" with the "significantly smaller" McCann.[4] Trial Record. at 436, 369. Dozier heard two gunshots. One of the bullets pierced Dozier's lung and narrowly missed his heart, and Dozier lost approximately forty percent of his blood volume. *Id.* at 473–74. Under these circumstances, we cannot conclude that there is a reasonable probability that the jury would have acquitted McCann of attempted murder had trial counsel objected to the attempted murder instruction and tendered a correct one. We therefore affirm the post-conviction court's denial of McCann's petition on this issue.

## II. Double Jeopardy

Next, McCann alleges ineffective assistance of counsel based on a failure to raise a double jeopardy issue regarding his

---

553–54 (during State's closing argument: "They made a mistake.... They need to find the right person."). *Cf. Blanche v. State,* 690 N.E.2d 709, 713 (Ind.1998) ("[N]ot every defective attempted murder instruction results in fundamental error. Where, for instance, the primary issue at trial was not the defen-

dant's intent, but the defendant's identity, we have found no fundamental error.").

4. The 6′1″ Dozier weighed 230 pounds at the time of the shooting. Trial Record at 457. A.L. estimated McCann's size at 5′10″ or 5′11″ and 160 pounds. *Id.* at 364.

attempted murder and burglary convictions and sentences.[5] The attempted murder count states that McCann "did attempt to commit the crime of murder that is, kill another human being, namely Anthony Dozier while committing or attempting to commit rape by engaging in conduct, that is: knowingly shooting at and against the person of Anthony Dozier with a firearm which constituted a substantial step toward the commission of said crime of murder[.]" Trial Record at 34.[6] The class A felony burglary count states that McCann "did break and enter the building or structure, of [A.L.], ... with intent to commit the felony of Rape therein, that is, with intent to knowingly or intentionally have sexual intercourse with [A.L.] a member of the opposite sex when [A.L.] was compelled by force or imminent threat of force to submit to such sexual intercourse, and which resulted in serious bodily injury to a person, namely: Anthony Dozier[.]" *Id.* at 34–35.[7] McCann asserts that a double jeopardy violation occurred because he was convicted and sentenced twice for the same injury to Dozier and that counsel was ineffective in failing to raise this issue.[8]

We need not specifically determine whether McCann's trial counsel was inef-

fective in failing to raise the issue at sentencing; indeed, McCann appears to retreat from this claim in his reply brief and focuses solely on the effectiveness of his appellate counsel. It is worth noting, however, that Indiana double jeopardy analysis was in a state of transition at the time of McCann's trial. In *Games v. State,* 684 N.E.2d 466 (Ind.1997), *modified on reh'g,* 690 N.E.2d 211, *cert. denied* (1998), which was then controlling precedent as to federal double jeopardy claims, our supreme court aligned its analysis of the Fifth Amendment's double jeopardy clause with federal jurisprudence, affirming the rule that where " 'the same act or transaction constitutes a violation of two distinct statutory provisions [and therefore does *not* constitute a double jeopardy violation], the test to be applied ... is whether each provision requires proof of an additional fact which the other does not.' " *Id.* at 475 (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)) (emphases in *Games* omitted). Clearly, the attempted murder statutes and the burglary statute each require proof of an additional fact which the other does not, and therefore McCann's convic-

---

**5.** The Fifth Amendment to the U.S. Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."

**6.** We agree with McCann that this charge "amounts to an allegation of attempted felony murder, an offense which does not exist in Indiana law." Appellant's Br. at 7; *see Coleman v. State,* 708 N.E.2d 25, 27 (Ind.Ct.App. 1999), *trans. denied.*

**7.** "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." Ind.Code § 35–43–2–1. The offense is a class B felony if it is committed

while armed with a deadly weapon or if the building or structure is a dwelling. *Id.* The offense is a class A felony if it results in bodily injury or serious bodily injury to any person other than a defendant. *Id.*

**8.** The post-conviction court found this issue waived because McCann had failed to raise it on direct appeal. We disagree with this finding for the reasons given in footnote 1, *supra.* The post-conviction court also found the issue to be *res judicata* because the appropriateness of the sentence had been addressed on direct appeal. We note that the constitutional issue of double jeopardy was not decided on direct appeal and that, in any event, McCann would not be precluded from raising the double jeopardy issue in the context of an ineffective assistance of counsel claim. *See Williamson,* 798 N.E.2d at 452–53.

tions do not constitute double jeopardy under the U.S. Constitution.[9] That said, the proper analysis for double jeopardy claims under the Indiana Constitution remained an open question after *Games.*

Our supreme court answered that question after McCann was sentenced but before his appeal was briefed. In *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), the court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (footnote omitted).[10] In a subsequent case decided nearly five months before McCann's appellate brief was filed, our supreme court addressed a double jeopardy claim regarding convictions for murder and class A felony robbery. *See Chapman v. State,* 719 N.E.2d 1232 (Ind.1999). The *Chapman* court noted that robbery may be enhanced from a class C to a class B felony "if committed while armed with a deadly weapon or if it results in bodily injury to any person other than the defendant" and to a class A felony "if it results in serious bodily injury to any person other than the defendant." *Id.* at 1234 (citing

Ind.Code § 35–42–5–1). The court then stated,

> Chapman contends, correctly in light of our recent decision in *[Richardson],* that his robbery conviction cannot be elevated by the same serious bodily injury (death) that formed the basis of his murder conviction. Here, the only injury was the fatal wound from a single gunshot. As a result, the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony, and the two cannot stand. Accordingly, we remand this case to the trial court with instructions to reduce the robbery conviction to a Class B felony.

*Id.* (footnote omitted).[11] McCann asserts that by the time of his appeal, Chapman "had made it clear that a double enhancement for the same injury was still considered double jeopardy." Appellant's Br. at 10.

The State contends that McCann's reliance on *Chapman* is misplaced, in that attempted murder (unlike murder) requires no proof of injury and that class A felony burglary requires no proof of the mechanism that caused the injury. While *Chapman* may not be directly on point, it clearly echoes the following principles

9. *Compare* Ind.Code §§ 35–41–5–1 (attempt) *and* 35–42–1–1 (murder) *with* Ind.Code § 35–43–2–1 (burglary).

10. In the companion case of *Taylor v. State,* 717 N.E.2d 90 (Ind.1999), our supreme court found that the *Richardson* double jeopardy test "constitutes a new constitutional rule of criminal procedure and thus is not available for retroactive application in post-conviction proceedings." *Id.* at 95. The new rule *was* available, however, for purposes of McCann's direct appeal. *See Smylie v. State,* 823 N.E.2d 679, 687 (Ind.2005) ("It is firmly established that 'a new rule for the conduct of criminal

prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.' ") (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)), *cert. denied.*

11. In an affidavit, McCann's appellate counsel stated that she "reviewed" *Richardson* and *Chapman* but "chose not to raise a double jeopardy claim" because she "believed the issues [she] chose to raise were stronger claims." Pet. Exh. B.

from Justice Sullivan's concurring opinion in *Richardson*, 717 N.E.2d 32:

> The legislature has provided that the punishment classification of certain crimes may be enhanced if the behavior which constitutes the crime is accompanied by certain specified additional behavior or causes certain specified additional harm. In situations where a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime is vacated. Recent examples include *Kingery v. State*, 659 N.E.2d 490, 496 (Ind.1995), and *Moore v. State*, 652 N.E.2d 53, 60 (Ind.1995), both reducing a Class A enhancement to a robbery conviction because the very same killing that was the basis of the enhancement was also the basis of a murder conviction.

*Id.* at 56 (Sullivan, J., concurring) (footnote omitted).[12] In essence, McCann's burglary conviction was improperly enhanced based on his shooting of Dozier, and McCann contends that counsel was ineffective in failing to raise this as an issue on direct appeal.

■■■ "To prevail on a claim of ineffective assistance of appellate counsel, the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice." *Gray v. State*, 841 N.E.2d 1210, 1214 (Ind. Ct.App.2006), *trans. denied.*

> When a petitioner claims the denial of effective assistance of appellate counsel because counsel did not raise issues the petitioner argues should have been raised, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. But this does not end our analysis. Even if we determine that counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail.

*Taylor v. State*, 840 N.E.2d 324, 338 (Ind. 2006) (citations and quotation marks omitted). We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Gray*, 841 N.E.2d at 1214 (quoting *Timberlake*, 753 N.E.2d at 605–06).

On appeal, McCann's counsel raised the following four issues: (1) whether the photo array shown to A.L. and Dozier was impermissibly suggestive and whether their in-court identifications of him as the perpetrator were improper; (2) whether the prosecutor committed misconduct in closing argument; (3) whether the trial court properly instructed the jury regard-

---

**12.** *See also Davis v. State*, 770 N.E.2d 319, 324 (Ind.2002) (" '[W]e have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.' *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). Among these is the doctrine that where a single act forms the basis of both a class A felony conviction and also the act element of an attempted murder conviction, the two cannot stand. *King v. State*, 517 N.E.2d 383, 385 (Ind.1988); *Bevill v. State*, 472 N.E.2d 1247, 1254 (Ind.1985).") (brackets added). We note that the *Richardson* double jeopardy test initially called *King's* and *Bevill's* viability into doubt. *See Richardson*, 717 N.E.2d at 32 (case syllabus mentioning abrogation of *King* and *Bevill)*.

ing specific intent for attempted rape; and (4) whether his sentence was manifestly unreasonable. *McCann I*, 742 N.E.2d at 1001. McCann points out that the first reported case in which a photo array was found to be impermissibly suggestive was decided in 2004. *See J.Y. v. State*, 816 N.E.2d 909, 913 (Ind.Ct.App.2004) ("Our review of relevant Indiana case law reveals no reported case where our courts have held that a photo array was impermissibly suggestive."), *trans. denied* (2005). He also states that no convictions had been reversed on the basis of prosecutorial misconduct in a closing argument since 1985. *See Hossman v. State*, 473 N.E.2d 1059, 1065 (Ind.Ct.App.1985) ("Even had Hossman not objected to these final argument remarks, we would review them as fundamental error and reverse."), *amended on denial of reh'g*, 475 N.E.2d 1197, *trans. denied*. He further asserts that the attempted rape instruction issue was meritless because our supreme court had recently held that "specific intent" instructions for attempted conduct are required only for attempted murder. *See Richeson v. State*, 704 N.E.2d 1008, 1011 (Ind.1998) ("We conclude that the special precautions we took in *Spradlin* are not warranted for lesser offenses."). Finally, McCann contends that appellate counsel's challenge to the reasonableness of his sentence "requires a subjective judgment about the offenses committed and the offender. Whether a double jeopardy violation has occurred, on the other hand, is an objective evaluation based on a fixed set of facts." Appellant's Br. at 5.

■■■ Under these circumstances, we conclude that the double jeopardy issue is significant and obvious from the face of the record and is clearly stronger than the issues raised by McCann's appellate counsel. The question then becomes whether there is a reasonable probability that the outcome of McCann's appeal would have been different had the double jeopardy issue been raised. We believe so.[13] Therefore, we conclude that McCann received ineffective assistance of appellate counsel and reverse the denial of his petition for post-conviction relief as to this issue.

■■■ We must now determine the proper relief in this case.

> When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. In the alternative, a reviewing court may vacate one of the convictions to eliminate a double jeopardy violation. In making that determination, we must be mindful of the penal consequences that the trial court found appropriate.

*Sanders v. State*, 734 N.E.2d 646, 652 (Ind. Ct.App.2000) (citations omitted), *trans. denied*. Here, the trial court characterized the facts of this case as "particularly aggravating" and determined that McCann deserved the maximum sentence on each

13. When McCann was sentenced, controlling precedent held that "[v]iolations of a defendant's double jeopardy rights constitute fundamental error." *Hobson v. State*, 675 N.E.2d 1090, 1094 (Ind.1996). In a case decided shortly before McCann's appeal, our supreme court "decline[d] to apply prior summary declarations that violations of double jeopardy rights constitute fundamental error" and stated that "[t]he issue of fundamental error is better determined on a case by case basis." *Taylor v. State*, 717 N.E.2d 90, 95 n. 7 (Ind.1999) (citing *Hobson*). We believe that there is a reasonable probability that McCann's counsel would have established fundamental error had she raised the double jeopardy issue on appeal.

count.[14] Trial Record at 609. Consequently, we remand with instructions to reduce McCann's class A felony burglary conviction to a class B felony [15] and impose a twenty-year sentence on that count, to be served consecutive to his concurrent fifty-year sentences for attempted murder and attempted rape, for a total executed sentence of seventy years. *See Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (remanding with instructions to reduce class B felony burglary conviction to class C felony on double jeopardy grounds and to impose specific sentence thereon).

Affirmed in part, reversed in part, and remanded.

BAKER, J., concurs.

VAIDIK, J., concurs with separate opinion.

VAIDIK, Judge, concurring in result.

I concur in the result reached by the majority, but I respectfully disagree with its reasoning as to why the attempted murder instruction given at trial was sufficient to withstand the prejudice prong of the *Strickland* test.

I agree that the attempted murder instruction here violates the rule set forth in *Spradlin,* 569 N.E.2d at 950, that an attempted murder instruction "must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." *See* slip op. at 8. Our

courts have consistently held that a trial court's use of an instruction containing *Spradlin* error constitutes fundamental error, i.e., that it is prejudicial to the defendant. *See Booker,* 741 N.E.2d at 751. Under that analysis, defense counsel's failure to object to such an erroneous instruction, then, ordinarily satisfies both prongs of the *Strickland* analysis: counsel's performance is deficient for failing to object to an instruction that is so clearly erroneous, and the resulting error is prejudicial to the defendant.

However, the use of an instruction containing *Spradlin* error is not *per se* prejudicial. Our Supreme Court has noted that "there have been cases where, despite clear *Spradlin* error, we did not vacate an attempted murder conviction because (i) the intent of the perpetrator was not a central issue at trial; (ii) the instructions as a whole sufficiently suggested the requirement of intent to kill; or (iii) both." *Williams v. State,* 737 N.E.2d 734, 737 (Ind.2000) (footnotes omitted). With regard to the question of intent at trial, McCann argues that "whether the gun discharged accidentally or with the specific intent to kill was a key question for the jury to resolve on the attempted murder count." Appellant's Br. p. 8–9. Indeed, the State agrees that intent was a central issue at trial. The majority responds to McCann's contention here by finding that "[o]bviously, the jury rejected any suggestion that the shooting was accidental; otherwise, it would have acquitted McCann of attempted murder and the lesser included

---

14. *See* Trial Record at 609–10 ("The case involves a home invasion of a residence for the purpose of committing the crime of rape. That the defendant attempted the rape of [A.L.] in this matter while she was pregnant. And that these offenses or this series of acts involves multiple victims; that is, one, [A.L.] is a victim of attempt rape; secondly, when her husband or boyfriend came to her aide

[sic] he was shot in his efforts to by the defendant in his efforts to save [A.L.] from any further assault by the defendant. The court finds no mitigating factors.").

15. *See* Ind.Code § 35–43–2–1 (stating that burglary is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling).

offenses of aggravated battery and battery." Slip op. at 8. To that end, the majority appears to believe that to the extent that intent was a central issue at trial, the jury in fact resolved the issue against McCann, which militates against reversal based on the *Spradlin* error. In other words, the majority concludes that even if the instruction failed to make clear to the jury the need to find specific intent to kill, because their decision indicates that they *found* that intent, we need not reverse based on the erroneous instruction.

This seems circular to me. If specific intent is a key issue at trial, I believe it is error for the trial court not to instruct the jury that the defendant must have the specific intent to kill before he may be found guilty of attempted murder. But our analysis does not end there. Under *Williams*, a *Spradlin* error is not per se prejudicial if the instructions as a whole sufficiently suggest the requirement of intent to kill. Here, the jury was adequately instructed on the mens rea of attempted murder.

The Indiana Supreme Court evaluated a jury instruction very similar to the one tendered at McCann's trial in *Yerden v. State*, 682 N.E.2d 1283 (Ind.1997). That instruction provided:

> A Person attempts to commit a crime when he knowingly or intentionally engages in conduct that constitutes a substantial step toward the commission of the crime.
>
> The crime of Murder is defined by statute as follows:
>
> A person who knowingly or intentionally kills another human being commits Murder.
>
> To convict the Defendant of Attempt Murder, in this case, the State must have proved each of the following elements:
>
> 1. The Defendant knowingly

> 2. Engaged in conduct that constituted a substantial step toward the commission of
>
> 3. Knowingly killing another human being.
>
> The Defendant must have had the specific intent to commit Murder in order to be found guilty of Attempt Murder. Intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death.

*Id.* at 1285. The Supreme Court held that although erroneous, "the instruction, on the whole, adequately informed the jury that Yerden must have intended to kill Bergstresser." *Id.* at 1286. Similar to this case, the instruction in *Yerden* stated that the defendant "must have had specific intent to commit murder." *Id.* Also, both instructions indicated that intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death. Finally, I find further analogy between these two cases because the *Yerden* Court cited no other instructions given at Yerden's trial, nor any charging information or clarifying arguments by counsel, which might have furthered the jury's understanding of the mens rea required for attempted murder. Following *Yerden*, then, McCann cannot make a showing of prejudice sufficient to satisfy the *Strickland* test as to ineffective assistance of counsel. For that reason, I concur in the result reached by the majority.