Doyle DOWLER, Appellant,

v.

STATE of Indiana, Appellee.

No. 34S00–8809–CR–829.

Supreme Court of Indiana.

Dec. 15, 1989.

James R. Fleming, Howard County Public Defender, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On September 22, 1986, Defendant–Appellant Doyle Dowler was charged in the Howard Circuit Court with the offense of Neglect of a Dependent With Serious Resulting Bodily Injury, a Class B felony, and Murder. The jury·found Dowler not guilty of murder but returned a verdict of guilty to neglect of a dependent with serious resulting bodily injury. The court subsequently sentenced Dowler for a term of twenty (20) years.

Five issues are presented for our review in this direct appeal as follows:

1. error of the trial court in permitting exhibits into the jury room during the jury's deliberations;

2. insufficiency of the charging information;

3. insufficiency of the evidence to sustain Dowler's conviction;

4. denial of motion for a new trial based upon newly discovered evidence; and

5. error in sentencing.

The facts show that victim Lucas Causey was fifteen (15) months old at the time of his death. His mother had abandoned the family and the father, Terry Causey, had custody of Lucas and two older children. Terry Causey and his children resided in a house in Kokomo along with Jeff Lamphier, Tim Moore, and Defendant–Appellant Doyle Dowler. Causey was often gone from the home and the other men would look after the children. There was some testimony that there was an agreement between Causey and the other men that they would look after the children when he was not there. There was also testimony that many times when Causey was gone Lamphier and/or Dowler would feel they were "stuck" with the children and would have to take care of them. Dowler fed, bathed, watched and disciplined the children when he was present and Causey was gone. The evidence showed that Dowler and Lamphier, in caring for the children, often mistreated Lucas. Each of them often "smacked" Lucas. Dowler had also forcefully thrown Lucas into his bed, causing him to bounce on the mattress and collide with the wooden rails. Dowler and Lamphier also had force fed Lucas by pushing food into his mouth and down his throat. There were times when Lucas would choke from this action. Also, Dowler had wrestled with Lucas and had "body-slammed" him and used his elbows on the baby. Dowler was not happy about having to care for the children as often as he did. There were other acts of violence, abuse, and neglect by Dowler and Lamphier.

The evidence showed that in the week prior to September 12, 1986, Lucas was ill. On the night of September 12, Dowler was intoxicated and dropped Lucas while carrying him around the house. Lucas thereafter had trouble breathing and was obviously injured and in pain. Later that night, Lucas' condition worsened and the child was taken to Howard Community Hospital in the early morning hours of September 13, 1986. Medical personnel at the hospital recognized a probability of child abuse and notified the police. Lucas was subsequently transported to Methodist Hospital in Indianapolis by lifeline helicopter. In spite of all efforts to revive him, including CPR, he died that morning. An autopsy revealed numerous bruises on Lucas' body which had been caused at various times previous to the last injury. Medical examiners determined from the coloration and condition of his bruises that Lucas had been abused over a period of time. In addition, the body showed signs of dehydration and malnutrition. Death resulted from blunt force injuries to the abdomen that apparently ruptured intestines and caused peritonitis. Medical experts also were of the opinion that had the child not been so dehydrated and malnourished, he might have survived the abdominal injuries with prompt medical care.

## I

██ The trial judge indicated in open court that he was going to allow the evidence to go to the jury room "as I normally do in criminal cases." Dowler objected generally in that this would call attention to certain evidence in the case, and not other evidence which had been presented, and was therefore prejudicial and probably

improper. The prosecuting attorney stated he had no objection since all of the evidence was going to the jury and not only selected parts of it and, moreover, Dowler had not pointed out any particular evidence to which he objected. Defense counsel then specified he had no objection to objects such as bottles, photographs, and other physical evidence but objected to statements of witnesses because other people had testified and not all of their testimony was going to the jury. He stated he had a problem with that and thought it was unfair. His objection was noted and overruled by the court.

On appeal, Dowler objects to Exhibits 39, 42, 43, and 45, arguing that those exhibits were equivalent to depositions, had no value other than impeachment and were improperly sent to the jury pursuant to this Court's decision in *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508 and its progeny.

The State claims Dowler has waived this issue because he gave different grounds at trial than he gives on this appeal. It is, of course, true that objections at trial must be specific and any grounds not raised are not available on appeal nor can a defendant add to or change his grounds for objection in the reviewing court. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872; *Sills v. State* (1984), Ind., 463 N.E.2d 228, 234. Dowler changed his position on appeal by pointing out the specific exhibits, by number and content, to which he assigns error. Since he failed to raise this issue before the trial court, it is not reviewable on appeal.

## II

■ Dowler claims the charging information on the neglect count was insufficient in that it did not specify the nature of the serious bodily injury alleged therein. The statute involved, Ind.Code § 35–34–1–4, provides the proper attack to make on an information on this ground is a motion to dismiss filed not later than twenty (20) days prior to the Omnibus date. Dowler did not file a motion to dismiss. He filed a "Motion to Make More Specific" sixteen (16) days before the Omnibus date. The above statute provides that if the motion is made later than the twenty (20)

days, it is subject to summary denial. *Foster v. State* (1988), Ind., 526 N.E.2d 696, 698; *Gibbs v. State* (1985), Ind., 483 N.E.2d 1365, 1366. Even assuming *arguendo* that Dowler did sufficiently raise the question by his "Motion to Make More Specific," we fail to see prejudice meriting reversal. Dowler's motion was directed to the count charging him with murder. In his oral argument he also referred to the neglect count, and claimed it, too, was lacking in sufficiency for the same reason. The trial court heard the motion and denied it. The record shows an Omnibus hearing was held at which time no further question was raised on the issue, discovery was furnished to Dowler on request, which appears to have covered all medical and police reports. Dowler was able to defend himself on these charges, was found not guilty of murder and guilty of neglect based on evidence presented that covered the period of time in which he lived in Lucas' home, took care of him and committed the acts of violence upon him culminating in his death. The contention that Dowler may be subject to double jeopardy by being criminally charged involving these facts because of a lack of specificity in this information is without merit. No error is presented on this issue.

## III

■ Dowler contends the evidence presented at his trial is insufficient to sustain his conviction on the neglect charge because the evidence does not show he had the care of the child nor does it establish he placed the child in a situation that resulted in serious bodily injury to the child. Dowler was charged with having voluntarily assumed the care of Lucas Causey and knowingly or intentionally placing Lucas in a situation that endangered his life or health and which resulted in serious bodily injury pursuant to Ind.Code § 35–46–1–4. It is, of course, well established that in a sufficiency issue we do not reweigh evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the conviction, the finding of the

trier of fact will not be disturbed. *Alfaro v. State* (1985), 478 N.E.2d 670, 672. Dowler claims the word "care" connotes acting with authority and there is no showing here that he was given authority over Lucas. He points to the fact that Lucas' father testified Dowler did not have the care of the child. Furthermore, the statute does not limit its coverage to those acting only with authority or permission but provides one having the care of a dependent whether assumed voluntarily or because of a legal obligation. As we have already pointed out in this opinion, there was testimony Dowler assumed responsibility for Lucas' care, sometimes alone and sometimes jointly with Lamphier. There was testimony that at times he did this at the request of Lucas' father and at other times volunteered to do it because no one else would. The evidence clearly showed that during the times he cared for Lucas, he himself either visited violence upon the victim or observed Lamphier doing it. There was more than sufficient evidence before the jury supporting their verdict of guilty beyond a reasonable doubt.

### IV

■ Dowler claims the trial court erred by denying his Motion to Correct Error and refusing to grant a new trial on his specification of newly discovered evidence. The newly discovered evidence alleged by Dowler was presented by way of an affidavit from Dowler's counsel claiming that after trial he learned from Detective Kellar that emergency personnel at Howard Community Hospital had performed CPR on Lucas and that this might have accounted for certain fresh bruises on the victim's chest. Relief by way of a new trial is authorized by Ind.R.Tr.P. 59(A)(1) [formerly Ind.R.Tr.P. 59(A)(6) ], where there is a showing of newly discovered evidence which meets the following nine (9) part test:

(1) [T]hat the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it

can be produced on a retrial of the case; and (9) that it will probably produce a different result.

*Wiles v. State* (1982), Ind., 437 N.E.2d 35, 39 (citing *Tungate v. State* (1958), 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36).

Disposition of motions for a new trial based upon newly discovered evidence is within the discretion of the trial court based on the nine point test stated above. *Scott v. State* (1987), Ind., 510 N.E.2d 170, 173–74, *cert. denied* (1987), 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490; *Woods v. State* (1985), Ind., 484 N.E.2d 3, 6. The State points out that in the discovery furnished to Dowler prior to trial, Lieutenant Stroup specifically noted when he arrived at Howard Community Hospital emergency medical personnel were working frantically on Lucas and were administering CPR. Other items were furnished through discovery indicating that Detective Kellar and Lieutenant Stroup were at the Hospital and procedures were being used to bring about Lucas' survival. There is little to support Dowler's contention that part (1) of the test, the evidence has been discovered since the trial, or part (6), that due diligence was used to discover it in time for trial, have been met. *Tope v. State* (1985), Ind., 477 N.E.2d 873, 876; *Smith v. State* (1981), Ind.App., 417 N.E.2d 939, 940. Furthermore, there is little, if any, reason to believe that this evidence would have produced a different result pursuant to part (9) of the test. The amount of testimony concerning the acts of violence and neglect against this child culminating in his death concerned much of his body, externally and internally, of which the bruises on the chest were only a part. Dowler does not allege nor show that CPR could or did cause actual bruising on the victim's body but only speculates it probably did. For these reasons, there is no showing the trial court abused its discretion in this regard. *Scott, supra; Woods, supra.*

### V

■ Finally, Dowler questions the trial court's sentencing order. Dowler was convicted of a Class B felony. The presumptive sentence is ten (10) years, to which the trial court may add up to ten (10) years for

aggravating circumstances. Ind.Code § 35-50-2-5. The trial court enhanced Dowler's sentence by the full ten (10) years, resulting in a twenty (20) year sentence. Therefore, the sentence is one authorized by the statute and our standard for review of a sentence is not to revise the sentence unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the offense and the offender for whom it was imposed. *May v. State* (1986), Ind., 502 N.E.2d 96, 99; *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 576. When the trial court increases a sentence for aggravating circumstances, the factors used in making that determination must appear in the record. *Shields v. State* (1988), Ind., 523 N.E.2d 411, 413. The record must show the sentence was based upon consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence to the objectives which will be served by that sentence. *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 521. Here, the trial court did give aggravating and mitigating circumstances and found the aggravators to outweigh the mitigators pursuant to Ind.Code § 35-38-1-7. The trial court found that Dowler visited these acts of abuse and neglect on a child who was fifteen (15) months old and totally unable to defend himself. The acts took many forms over some period of time, many of them physical blows to the body which caused bruises and internal injuries culminating in the infant's death. We do not find this sentence to be manifestly unreasonable to the extent that no reasonable person could find it appropriate under the circumstances. *Shields, supra; May, supra; Mahla, supra.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.