**Keon D. JONES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 52A02–0611–CR–1029.**

Court of Appeals of Indiana.

July 6, 2007.

---

Susan K. Carpenter, Public Defender of Indiana, Eugene C. Hollander, Special Assistant to the Office of the State Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Keon Jones appeals his conviction for conspiracy to commit armed robbery, a class B felony, carrying a handgun without a license, a class A misdemeanor, and attempted murder, a class A felony. We affirm in part, vacate in part, and remand with instructions.

### Issues

Jones presents three issues for our review, which we restate as follows:

I. Whether the charging instrument and attempted murder instruction were proper;

II. Whether a criminal recklessness instruction should have been given; and;

III. Whether his sentence was appropriate in light of the nature of the offenses and his character.

Due to our resolution of the first issue, we provide only limited discussion regarding the second and third issues.

### Facts and Procedural History

In March 2005, eighteen-year-old Jones and his young son were living with Jennifer Brown and her two children. On the evening of March 2, 2005, Jones and Brown were playing cards and smoking marijuana with acquaintances Sarah Steele and Robert Sucharski when Brown suggested that the foursome order pizza and rob the pizza deliveryman to secure rent money. Though no formal plan was discussed, Brown ordered pizza from Pizza Quik and requested it be delivered to her sister's house. Brown drove to her sister's home.

Approximately ten or fifteen minutes after Brown had left, Sucharski drove his car toward Brown's sister's house; Jones

rode along with Sucharski, both on the lookout for the pizza delivery vehicle. Jones brought with him his gun, which had been lying out on a table at Brown's house. In the meantime, Brown paid for the pizza, and the delivery vehicle headed back toward Pizza Quik. However, Sucharski and Jones spotted the delivery vehicle, at which point Sucharski navigated his car in front of it, slowed, and activated the hazard lights. Believing Sucharski's car might need assistance, the pizza delivery-man, Daniel Douglass, pulled his vehicle alongside it and rolled down his window to inquire. Jones exited Sucharski's car, stated, "I need some help man," and quickly approached the delivery vehicle. Tr. at 204. Suspecting something was amiss, Douglass "put [his] car into gear and ... started to release the clutch." *Id.* at 205. As his delivery vehicle inched forward, Douglass checked over his shoulder to watch what Jones was doing. Jones fired a bullet that shattered the delivery vehicle's rear window and then lodged in the passenger seat headrest. Douglass immediately crouched down in his vehicle and swiftly sped away. Jones shot five more times toward the delivery vehicle. Of the six total shots fired, five struck the delivery vehicle.

The State charged Jones with three counts: (1) conspiracy to commit armed robbery,[1] a class B felony, (2) carrying a handgun without a license,[2] a class A misdemeanor, and attempted murder,[3] a class A felony. Appellant's App. at 11–13. During the July 2006 trial, defense counsel made multiple requests for a pattern instruction on criminal recklessness and was denied each time. Tr. at 83, 192, 223, 376, 378, 397. The jury returned guilty verdicts on all three counts. The following month, the trial court sentenced Jones to the Indiana Department of Correction for ten years on the conspiracy conviction and for forty years on the attempted murder conviction. App. at 154. The court sentenced Jones to the Miami County Jail for one year on the handgun conviction. All sentences were to be served concurrently.

## Discussion and Decision

### I. Committing Certain Conduct with Specific Intent

■ Relying primarily on *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991), Jones takes issue with the attempted murder information and with the attempted murder final instruction. Acknowledging that the defense did not previously object on

1. Ind.Code § 35–42–5–1 ("A person who knowingly or intentionally takes property from another person or from the presence of another person:
   (1) by using or threatening the use of force on any person; or
   (2) by putting any person in fear;
   commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant[.]").

2. Ind.Code § 35–47–2–1(a) ("Except as provided in subsection (b) and section 2 of this chapter, a person shall not carry a handgun in any vehicle or on or about the person's body, except in the person's dwelling, on the person's property or fixed place of business,

without a license issued under this chapter being in the person's possession.").

3. Ind.Code § 35–42–1–1(1) ("A person who: (1) knowingly or intentionally kills another human being; ... commits murder, a felony."); Ind.Code § 35–41–5–1(a) ("A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."). To prove attempted murder, the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct that was a substantial step toward such killing. *Henderson v. State*, 825 N.E.2d 983, 987 (Ind.Ct.App. 2005), *trans. denied.*

these grounds, Jones contends that fundamental error occurred and requires reversal. "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind.2006).

### A. Information

■ The attempted murder information charged that on March 2, 2005, Jones "did knowingly attempt to kill" Douglass "contrary to the form of the statutes in such cases made and provided by I.C. 35–42–1–1(1)." Appellant's App. at 13. Jones asserts that the charging instrument improperly refers to a "knowing" attempt and fails to specify the substantial step/conduct that he allegedly engaged in with specific intent to kill. In addressing this issue, we are guided by Indiana Code Section 35–34–1–4, which "provides the proper attack to make on an information . . . is a motion to dismiss filed not later than twenty (20) days prior to the Omnibus date." *Dowler v. State*, 547 N.E.2d 1069, 1071 (Ind.1989). Jones does not aver and the record before us does not disclose that he ever made such a motion. Accordingly, no such issue is presented for our review. *See Zordani v. State*, 175 Ind. App. 297, 298–99, 371 N.E.2d 396, 398 (1978); *see also Gibbs v. State*, 483 N.E.2d 1365, 1366–67 (Ind.1985) (noting that untimely filing of such a motion causes issue to be waived).

■ Waiver notwithstanding, we note, "the purpose of a charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Brown v. State*, 830 N.E.2d 956, 963 (Ind.Ct.App. 2005) (citing *Ben–Yisrayl v. State*, 738 N.E.2d 253, 271 (Ind.2000)). Undoubtedly, the information entitled "Attempted Murder" could have been drafted better. However, Jones never seriously disputed that he was the person who shot his gun during the botched robbery attempt on the day in question. As such, we are hard-pressed to believe that the information, as sparsely worded as it was, did not provide Jones with sufficient notice of the crime with which he was charged so that he could prepare a defense. Indeed, he gives no indication that his defense was hampered. Under these circumstances, Jones has not demonstrated that the less-than-perfect charging information falls within the "extremely narrow" fundamental error exception. *Mathews*, 849 N.E.2d at 587.

### B. Instructions

The challenged instruction provides, *inter alia*:

> To convict [Jones] of Attempted Murder, a Class A felony, the State must have proved each of the following elements beyond a reasonable doubt:
>
> (1) The Defendant, Keon Jones,
>
> (2) acting with the specific *attempt* to kill, Daniel Douglass,
>
> (3) did attempt to kill another person,
>
> (4) which was conduct constituting a substantial step toward the commission of the *intended* crime of killing Daniel Douglass.

Appellant's App. at 124 (final instruction # 6) (emphases added). Jones contends that the instruction "fails to specify what act, i.e. firing shots at an automobile, the State had to establish, and the jury had to find was committed with the specific intent to kill." Appellant's Br. at 12. In addition, he notes a typographical error in that the instruction mistakenly uses "attempt" where it should say "intent."

██ In analyzing Jones' instructional challenge, we are guided by the *Spradlin* rule: a conviction for attempted murder "requires proof of specific intent to kill" at the time the defendant took a substantial step toward committing murder. *Taylor v. State*, 840 N.E.2d 324, 337 n. 3 (Ind. 2006) (citing *Spradlin*, 569 N.E.2d at 950). The "higher sentence range for attempted murder in combination with the ambiguity involved in the proof of that crime" justifies the *Spradlin* rule. *Richeson v. State*, 704 N.E.2d 1008, 1011 (Ind.1998). "Instructing the jury with a list of elements which suggests that it may convict on a lesser mens rea, such as 'knowingly,' constitutes [*Spradlin*] error." *Beasley v. State*, 643 N.E.2d 346, 348 (Ind.1994).

██ Depending upon the particular facts and circumstances, a *Spradlin* claim may present either a fundamental error or an error that does not require vacation of an attempted murder conviction. *See Ramsey v. State*, 723 N.E.2d 869, 872 (Ind. 2000) (noting a "*Spradlin* claim presents the *potential* for fundamental error") (emphasis added). As our supreme court has explained,

> [i]nstances of *Spradlin* error are not per se reversible. Indeed, we have held in some cases, typically post-conviction relief appeals, that error of this sort was not fundamental especially when the intent of the perpetrator was not a central issue at trial, *see Swallows v. State*, 674 N.E.2d 1317 (Ind.1996), or if the wording of the instruction sufficiently suggested the requirement of intent to kill, *Jackson v. State*, 575 N.E.2d 617, 621 (Ind.1991).

*Metcalfe v. State*, 715 N.E.2d 1236, 1237 (Ind.1999). However, where intent was vigorously contested and/or the instructions did not sufficiently inform the jury on specific intent, a *Spradlin* error may rise to fundamental error. *See, e.g., Williams v. State*, 737 N.E.2d 734, 737 (Ind.2000).

██ In Jones' case, "specific intent to kill" appears nowhere in the final instructions provided to the jury. Instead, the judge read Final Instruction # 6, which stated that if the State proved that while acting with the "specific attempt" to kill Douglass, Jones did attempt to kill him, which was a substantial step toward the commission of the "intended crime" of killing Douglass, then the jury could convict Jones of attempted murder. App. at 124. As for the other final instructions, rather than clarifying, they further muddied the waters. Final Instruction # 3, for instance, rehashed the poorly worded charging information:

> on or about March 2, 2005, in Miami County, State of Indiana, Keon D. Jones, did *knowingly attempt to kill* another human being, to-wit: Daniel B. Douglass, contrary to the form of the statutes in such cases made and provided by I.C. 35–42–1–1(1) and against the peace and dignity of the State of Indiana.

*Id.* at 121 (emphasis added).[4] Final Instruction # 7 provided:

> A person attempts to commit a crime when, acting with the culpability[5] required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the

---

4. The trial judge read this problematic attempted murder charging information at the beginning of trial as well.

5. It is well established that the culpability or mens rea for murder is *either* knowingly *or* intentionally. *See* Ind.Code § 35–42–1–1 (A person who "knowingly or intentionally kills another human being" commits murder).

same class as the crime attempted. However, an attempt to commit murder is a class A felony.

*Id.* at 125. Final Instruction # 8 provided:

A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

A person engages in conduct "recklessly" if, when he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

*Id.* at 126.

It would be intellectually dishonest to conclude that the above instructions as a whole succeeded in informing the jury that intent to kill is an element of the crime of attempted murder. *Cf. Yerden v. State,* 682 N.E.2d 1283, 1285 (Ind.1997) (noting erroneous enumerated elements, but concluding no fundamental error because last two sentences of attempted murder instruction required that defendant "must have had specific intent to commit murder."); *Greenlee v. State,* 655 N.E.2d 488 (Ind.1995) (noting *Spradlin* error, but concluding not fundamental where jury was adequately informed of *Spradlin* via charging information that essentially included intent to kill as element and by

defendant's instructions, which mentioned intent to kill, intent to commit murder, and specific intent at three different points); *Price v. State,* 591 N.E.2d 1027 (Ind.1992) (finding no fundamental *Spradlin* error where instructions taken as a whole succeeded in informing jury that intent to kill is an element of attempted murder and where jury was read the charging information which included intent to kill language).[6]

■ Moreover, we cannot say that intent was not at issue in Jones' case. To the contrary, as early as voir dire, the State began laying the foundation for its argument regarding intent:

So, and I think it's probably going to be a central issue in this case is what the defendant's intentions were. . . . Um, again, you can uh, you have that saying that actions speak louder than words. It's at that point you've taken some kind of an action that you can identify and you say that a lot of times you can discern, you know, that that's something you can see or um, not really touch but you know that happened and you can make a judgment from that as to whether that, what that person intended. . . .

Tr. at 106. Another example:

[The State]: Okay. Uh, which would you, if, (inaudible), do you think a person's actions or their words would be more important?

BY PROSPECTIVE JUROR: Their actions.

6. Our decision is unaltered by the lone, properly worded, one-sentence definition for attempted murder, which was read along with several pages of preliminary instructions prior to the presentation of evidence. Tr. at 181 ("The crime of attempted murder is defined as follows: A person *attempts to commit* murder when acting with a specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing

that person."), 179–85 (other instructions). As demonstrated by the excerpts *supra,* by the end of trial, that single, brief, accurate recitation had morphed into the lengthier, erroneous instruction; that instruction, in conjunction with the other confusing instructions, the improper charging information, and the dispute over intent, created the vexing problem presented on appeal.

[The State]: How about words? I kind of used the example of uh, words before (inaudible). If I say I'm gonna, I got a baseball bat and I say I'm gonna hit you with this baseball bat and then I hit you. Well then that's really direct statement (inaudible). What about uh, statements of, what if I didn't say I would and I'm standing here with that baseball bat and it's clearly not accidental and I just, you know, I kind of get ready and I take a big swing and I hit you. Would have any less doubt about what my intention was than if I had just told you what I was gonna do?

BY PROSPECTIVE JUROR: No.

[The State]: Okay. And which, in your mind, would be more important in terms of verbalizing intent, being said before the fact or being said after things had happened, if there is a distinction in your mind?

*Id.* at 108; *see also id.* at 111 (State's comment: "Their actions [rather than words] are probably more important to you?"), 116 (State's comment: "intent can form in a split second as long as you find it to be there").

The defense also zeroed in on intent during voir dire:

Well we talked a lot about intent and obviously this case is gonna come down to uh, what the, Mr. Jones intended on doing, this Keon Jones over here, the person I'm seated with ... The third charge being uh, attempted murder and that's why you've been asked a lot about intent and what intent means and what intent could mean and that's because there's two elements to uh, this charge of attempted murder.... So you're gonna be asked to try to get inside of his head which is not an easy thing to do uh,

and never easy to try to figure out what somebody was thinking.

*Id.* at 118–19. The defense further stated:

Real hard to tell what my intent was in that particular circumstance. It's gonna be really hard to tell based on the act itself. So in that circumstance, you may have to say well, what did he say he meant to do if I did say anything before I did it. Or maybe what I told my friends my intent was. Or maybe afterwards what I told the police my intent was. So uh, I'll ask you to keep that in mind when you think about the intent that it's not just I walked up and clubbed you over the head. Um, I can come close also and maybe have two separate intents.

*Id.* at 127.

In the defense's opening statement, counsel stated:

Well, I'd like to disagree with uh, a number of things [the State] said [in its opening statement] but to be honest, I can't disagree with a whole lot of it. This case is gonna come down to basically one issue and that is the attempted murder uh, portion of this case and whether or not you believe the intent was to kill uh, Daniel Douglass, okay? So that, that's what, why we talked so much about intent yesterday [be]cause we knew it was gonna come down to basically that issue.... I'd ask that you remember that you have to prove beyond a reasonable doubt that he intended to kill Daniel Douglass, okay? Beyond a reasonable doubt uh, what this case is gonna boil down to is that intent....

You'll see that this was characterized as criminal recklessness with a weapon. And that's what this case really is. It's criminal recklessness. There was a reckless act. But it wasn't an intentional act that I'm going to murder some-

body. That was never the intention and you'll see that also from Keon Jones' statement if that does come into evidence, which I assume it will, and that he told the police exactly what the intent was. So that's why I ask that, we talked about it yesterday, that, you know, they want to bring his statement in to show what he [w]as thinking and what he was doing but then they don't want you to believe the part about what his intent was.

*Id.* at 191.

During cross examination of Sucharski, the defense elicited testimony that there was never a plan to injure the pizza delivery man, that there was specific talk about not injuring him, that Jones did not intend to kill Douglass, that Jones and Sucharski were "really upset" about the incident, and that Jones fired the shots to "scare" Douglass. *Id.* at 251–52, 256–59, 267–70. When pressed on redirect, Sucharski admitted that while he did not think that Jones intended to kill Douglass, he was not certain. *Id.* at 261–62. Other testimony contradicted Sucharski's account. *Id.* at 295.

Finally, closing statements honed in on intent:

> What we're really here, I, I, what we're really here I think on uh, is whether or not the defendant attempted to kill Daniel Douglass and that's clearly the thing that we've been talking about and arguing about and we're really not here uh, it's even a finer point than that I guess as to whether, I don't think as much dispute about the actions he took towards that um, but we're really here on a very narrow question is what did he

intend when he took the actions that are really undisputed. I mean what he did is really undisputed. So the question is even narrower and in the uh, issue of when he took those actions, what was his intention. Did he intend to kill Daniel Douglass. That's the question. What was his thought process when he was shooting at that car basically.

*Id.* at 403 (State's final argument). The State then highlighted evidence that it believed could lead jurors to infer that Jones intended to kill Douglass. Not surprisingly, the defense argued otherwise. *See id.* at 415–17 ("whether or not they prove that [Jones] intended to kill this man, did he intend to when he decided he was gonna shoot. Was his thinking I wanna kill that guy. I want him to be dead. Again um, I'd ask you to find that ... Jones is not guilty of the attempted murder.").

To summarize, the intent question was not merely *an* issue in Jones' trial; it was *the crux* of the case. Yet, neither the final instructions nor the charging information properly informed the jury of the law regarding specific intent in the context of attempted murder. To make matters worse, the jurors—presented with essentially uncontradicted evidence that during a robbery attempt, Jones fired six shots at a fleeing pizza delivery vehicle, that five shots hit the vehicle, and that one lodged in the car's headrest—had only two possible votes from which to choose: guilty or not guilty of attempted murder. Criminal recklessness while armed with a deadly weapon, a class D felony, was not an available option for the jury because the trial court refused to instruct on it.[7] Faced

---

7. The trial court viewed the State's poor wording of the attempted murder charging information as foreclosing criminal recklessness with a weapon as a factually included offense. *See Wright v. State,* 658 N.E.2d 563, 565–67 (Ind.1995) (setting out three-part analysis for factually or inherently included offenses). Given the other charges brought against Jones as well as the evidence introduced at trial, Jones should have been granted one of his numerous requests for an instruction on criminal recklessness with a

with these unique circumstances, we cannot agree that the *Spradlin* error did not prejudice Jones. To the contrary, we have no alternative but to find fundamental error. *See Specht v. State*, 838 N.E.2d 1081, 1091 (Ind.Ct.App.2005) (noting fundamental *Spradlin* error where intent was squarely at issue and instructions were deficient), *trans. denied; see also Williams*, 737 N.E.2d at 737 (finding *Spradlin* error fundamental where the instructions as a whole did not sufficiently suggest the requirement of intent to kill and where intent was hotly contested).[8]

Accordingly, we affirm the convictions of conspiracy to commit armed robbery and carrying a handgun without a license, but remand with instructions to vacate Jones' convictions for attempted murder. Our

opinion should not be read to prohibit the re-filing of appropriate, carefully worded charges. As for Jones' sentencing challenges,[9] our holding makes any examination of the appropriateness of his sentence premature.

Affirmed in part, vacated and remanded in part.

BAKER, C.J., and FRIEDLANDER, J., concur.

---

weapon. Tr. at 83, 192, 223, 376, 378, 397. Jones' case was hardly lacking evidence of mere reckless behavior. *Cf. Ellis v. State*, 736 N.E.2d 731, 734 (Ind.2000) (addressing case where defendant, who was upset by sight of estranged wife kissing another man, retrieved gun, entered home, shot and killed his wife, shot the man in the face, broke down a door, and shot his father-in-law twice; concluding that trial court did not err in refusing to instruct jury on criminal recklessness because it was neither inherently nor factually included in the attempted murder charge); *cf. also White v. State*, 849 N.E.2d 735, 738 (Ind.Ct. App.2006) (concluding that failure to instruct on criminal recklessness was not error where defendant shot and killed one victim, then shot second victim multiple times from close range, hitting his abdomen, buttock, thigh, necessitating surgery), *trans. denied.*

8. *Cf. Hopkins v. State*, 782 N.E.2d 988, 991 (Ind.2003) (rejecting claim of fundamental error on an attempted murder instruction based on the State's overwhelming evidence; specifically, defendant and brother confined man and woman in basement, brother went upstairs to look for drugs, defendant shot man at close range, brother returned and shot woman at short range with defendant present);

*McCann v. State*, 854 N.E.2d 905, 910–11 (Ind.Ct.App.2006) (affirming denial of postconviction relief where attorney may have performed deficiently in failing to object to attempted murder instruction, but no prejudice could be shown in light of overwhelming intent evidence; specifically, defendant, upon being interrupted during his sexual attack of woman by woman's boyfriend, shot boyfriend twice, pierced his lung, and caused him to lose forty percent of his blood volume). Unlike *Hopkins* and *McCann*, Jones' case was not one of overwhelming evidence of the specific intent necessary for attempted murder.

9. In challenging his sentence, Jones focuses upon what he perceives as the comparatively light punishment, if any, meted out to the others who participated in this robbery gone awry. He makes vague allegations of disparate treatment due to race and/or relationships with certain officials. In addition, he faults the court for relying on his prior failed attempts at rehabilitation as a separate, additional aggravating circumstance from his criminal history. *See Morgan v. State*, 829 N.E.2d 12, 14, 17 (Ind.2005). If and when Jones is re-sentenced for these actions, we presume the trial court will correctly apply the law to his specific situation.