**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 17 2013, 5:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DELLIA CASTILE,                    )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                      )    No.  71A04-1212-CR-625
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1111-FB-198

**September 17, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

The appellant-defendant Dellia Castile, her son, his three children and their cousins, all lived together at Castile's residence. Castile's son routinely abused and beat the three boys and he eventually killed one of them. Castile knew of the abuse and occasionally thwarted police department and Department of Child Services (DCS) investigations about the incidents.

Castile appeals her convictions for Neglect of a Dependent,[1] a class A felony, and two counts of Neglect of a Dependent,[2] a class B felony. Castile maintains that the trial court erred in denying her motion to dismiss the charges against her and challenges the sufficiency of the evidence. Castile also maintains that the fifty-year aggregate sentence the trial court imposed was inappropriate.

Concluding that the trial court properly denied Castile's motion to dismiss the charges against her, finding that the evidence was sufficient to support the convictions, and determining that Castile's sentence was not inappropriate, we affirm the judgment of the trial court.

## FACTS

Te., age fourteen, Tram. age ten, and Ter., age eight, lived with their father, Terry Sturgis, their cousins, and Castile—their grandmother—at Castile's house in South Bend. Sturgis was away from home quite often to receive dialysis treatment, leaving his sons at home with Castile. She would play games with the boys and join them in their activities

---

[1] Ind. Code § 35-46-1-4.

[2] I. C. § 35-46-1-4(b).

"almost every day." Tr. p. 895. Castile also made sure that the boys had everything they needed for school on a daily basis.

Beginning in August 2008, Sturgis physically abused the boys several times a week. Sturgis would beat them with sticks, poles, table legs, and belts, and burn them with an iron. On occasion, Castile would tell Sturgis to "stop whoopin' them before he end[ed] up killing one of them." Id. at 790, 810. Sometimes Castile would promise to wash Sturgis's clothes or give him cash if he would not "whoop them." Id. at 790, 899. Castile would often treat the boys' injuries, and she saw Sturgis choke and burn Te. on one occasion. Castile also told Sturgis that "he did not know his own strength," and that he "could kill the boys." Id. at 713.

On February 10, 2010, Tram.'s elementary school teacher informed the school nurse that Tram. reported that Sturgis had hit him. Robin Braun, an investigator with the DCS, spoke with Tram. Thereafter, Braun spoke with Sturgis and informed him of the nature of the allegations in front of Castile. Braun also spoke to the other children, but they claimed that Tram. was lying about Sturgis's alleged abuse. As a result, Braun decided not to pursue the matter after concluding that Tram.'s allegations were unsubstantiated.

DCS Case Worker Ermin Pucar also conducted an investigation in May 2011, about instances of abuse. Pucar talked with Castile, Sturgis, and the children. It appeared that Castile "was caring for all" of the children "equally." Tr. p. 872-73. When Pucar spoke with Castile about the allegations of abuse, Castile denied that any of the

3

children were being inappropriately disciplined or abused. Castile told Pucar that she would "not allow that to happen." Id. at 877-78.

On September 4, 2011, Sturgis became angry with Te. for taking one of his brother's snacks, so he began hitting Te. with a table leg and "bust[ed his] head." Id. at 707. Te. started to bleed and Sturgis doused him with water. Sturgis then took Te. upstairs and showed Castile what had happened. Castile remarked that Te. would likely need stitches and directed Sturgis to take him to the hospital. Sturgis complied, but he told Te. to tell medical personnel that he had hit his head on the bed frame. Te. required twelve stitches for his injuries.

Several weeks later, Sturgis became upset with Te. and accused him of lying and stealing. Castile was present and witnessed Sturgis throw Te. down the stairs and ram his head against a wall.

On November 4, 2011, Te. caused a disturbance at school and told Castile about the incident that afternoon. As punishment, Castile directed Te. to clean the basement. When Sturgis came home, Te. walked upstairs and noticed that Sturgis was holding a stick and some duct tape. Castile and Sturgis discussed the school incident with Te., and Sturgis told Te. that he did not believe his account of what had happened. Sturgis then remarked that "me and my stick gonna have some fun." Tr. p. 689.

Sturgis grabbed Te. by the neck, ripped off Te.'s pants, and began hitting him with the stick. Id. at 690. While Te. was "moaning and screeching," Sturgis wrapped Te.'s arms with duct tape. Te. was able to escape and ripped the tape from his arms. However,

4

Sturgis hit Te. with the stick and "busted [his] head open." Id. at 691. Sturgis then sat on Te. and started choking him. Sturgis looked over at Tram. and started hitting him with the stick. Sturgis choked Tram., wrapped him in duct tape, and burned him with an iron. Sturgis also used the iron to burn the other two boys. The entire incident lasted several hours. After continually beating and burning the boys, Sturgis told them to clean themselves up. Sturgis became upset again and when he saw Tram. drop an ice pack, he burned him again and choked him. Even though Tram apologized, Sturgis continued to hit him and eventually threw him on the stairs. Sturgis punched Tram. several more times before choking him and saying, "that's how it feels to get knocked the f**k out." Tr. p. 701. Sturgis then told Te. to continue cleaning up and monitoring Tram. to make sure that he continued breathing. Te. then went upstairs to use the bathroom.

At some point, Sturgis noticed that Tram. was not breathing and began performing CPR. Tram. then began to vomit. Sturgis clothed Tram. and took him upstairs. Sturgis yelled for Castile but she responded that she did not want to see Tram. "like this." Id. at 703.

Sturgis told Castile that if the police asked what had happened, she should tell the officers that Tram. had been playing with a pot of hot water. Castile then called 911 and requested an ambulance. Castile reported that her grandson was not breathing. When the emergency dispatcher requested additional information, Castile hung up the phone. South Bend police officer Andy Witt was dispatched in response to the report that a young boy was not breathing. When Officer Witt arrived, he entered through the front

door and saw Tram. lying on the floor. The officers noticed that Tram. had no pulse, so they began performing CPR. When Officer Witt opened Tram's. shirt to perform chest compressions, he saw multiple burns and wounds covering Tram.'s body.

As Officer Witt began the chest compressions, he noticed that Tram's. body was cold. An ambulance arrived and transported Tram. to the hospital. Officer Witt checked the basement and saw vomit on the stairs. No one was in the basement at the time. Officer Witt then noticed several children in an upstairs bedroom.

The police transported the surviving children to the South Bend Police Station, where Officer Witt bought them breakfast. South Bend Police Officer Steve Noonan went to the hospital, and the attending physician informed him that Tram. had significant injuries and had died. South Bend Police Sergeant Thomas Cameron photographed Tram's body at the hospital. Sergeant Cameron noticed that Tram. had sustained numerous injuries, some that were fresh, and others that appeared to be days, months, or a year old. Sergeant Cameron counted over sixty wounds on Tram's. body.

Ter. and Te. were also taken to the hospital for treatment. Thereafter, Doctor Thomas Soisson, a pediatrician in South Bend, examined the two children and observed that Te. was covered with a multitude of scars and other injuries. Those injuries ranged from less than a few weeks old to more than a year old. Many of the injuries were burns, but some indicated that Te. had been hit with different objects including a cord and a hard object or stick. Ter. had similar injuries, including burns, whip marks, and other areas from where he had been beaten. Many of Ter.'s injuries resulted in permanent scars.

6

Dr. Pamela Archuletta performed the autopsy on Tram. It was discovered that he had sustained multiple injuries that contributed to his death; however, the fatal injury was one to his head that resulted in brain swelling and respiratory arrest. Tram.'s skull showed multiple contusions, swelling, and a fracture. He also had a number of injuries on his face and head, including burns. There were older scars as well, and some of his injuries were consistent with being grabbed by the throat.

The autopsy established that there were so many contusions on Tram.'s back that they "almost seemed to be coalescing together." Tr. p. 590. There were several older scars on Tram.'s back, and a posterior rib fracture that "required a lot of strength" to inflict. Id. at 591. Tram's skull, rib, and tail bone fractures were all recent. Dr. Archuletta observed several contusions on Tram.'s upper legs that were in various stages of healing. There were several healed scars on his buttocks and lower limbs. Tram.'s arms also showed injuries in various stages of healing, with some being older, healed scars. Tram.'s left arm showed a fresh fracture, while his right arm had a break that had healed and was several months old.

The police interviewed Castile on two occasions. Castile initially indicated that she did not go downstairs to the basement very often because she did not feel comfortable walking up and down the steps. However, Castile ultimately admitted that she knew of Sturgis's ongoing abuse and the injuries that he inflicted on the children. Castile acknowledged that she would promise certain things to Sturgis to reduce the abuse that he was inflicting on the children. She admitted offering to do his laundry and would

7

occasionally offer him money. Castile also acknowledged that she treated the children after Sturgis hurt them. Castile stated that when she would hear the children screaming, she would tell Sturgis to stop.

On November 16, 2011, the State charged Castile with three counts of neglect of a dependent as class B felonies. On November 29, 2011, Castile filed a motion to dismiss the charges against her, claiming that the probable cause affidavit failed to establish that the children were her dependents. The trial court denied Castile's motion on December 6, 2011.

On June 6, 2012, the State moved to amend the charging information, changing count II to neglect of a dependent, a class A felony. On the same day, Castile moved to dismiss the amended count. The trial court denied Castile's motion to dismiss and granted the State's motion to amend the information.

Following a jury trial that concluded on October 10, 2012, Castile was found guilty as charged. Castile was subsequently sentenced to ten years on Count I, thirty years on Count II that was to run consecutive to the sentence imposed in Count I, and to ten years on Count III that was to run consecutively to the sentence on Counts I and II. Thus, Castile received an aggregate sentence of fifty years. She now appeals.

DISCUSSION AND DECISION

I. Dismissal of Charges

Castile claims that the trial court erred in denying her motion to dismiss the charges. Specifically, Castile contends that the charges alleged in the informations and

probable cause affidavit were not specific enough to enable her to prepare a defense. Moreover, Castile contends that the charging documents failed to establish that the children were her dependents and that she had "care, custody, or control of them." Appellant's Br. p. 9.

We initially observe that the trial court's denial of a motion to dismiss is reviewed for an abuse of discretion. Thompson v. State, 966 N.E.2d 112, 117 (Ind. Ct. App. 201), trans. denied. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court misinterprets the law. Id.

Indiana Code section 35-46-1-4 provides that "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally . . . places the dependent in a situation that endangers the dependent's life or health commits neglect of a dependent, a class D felony." However, the offense becomes a class B felony "if it results in serious bodily injury" and a Class A felony "if it is committed by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age." I.C. § 35-46-1-4.

Castile alleged the following in her motion to dismiss:

The probable cause affidavit does not set out facts from which a neutral magistrate could determine that the three alleged victims were dependents of the defendant, . . . that defendant placed any of the three alleged victims in a situation endangering the life, safety or health of the alleged victims. [And] the information does not state the offense with sufficient certainty . . . . [and] does not provide the defendant with adequate notice of the

9

particulars of the crime with which she is charged and to which she can raise a defense.

Appellant's App. p. 356-65.

As for Castile's first claim in support of her motion to dismiss, we note that our Supreme Court in <u>Bean v. State</u> determined that there "is no requirement in Ind. Code § 35-46-1-4 that the person charged with the crime be the legal guardian or natural parent of the child." 460 N.E.2d 936, 942 (Ind. 1984). Here, although it was established that Sturgis was the boys' father and official guardian, the supplemental probable cause affidavit and charging informations alleged that the victims were Castile's grandchildren, they lived in her home, she cared for them when her son was gone, and frequently had the care of all the children in the home. Amend. App. p. 376-81. Thus, the charging documents established that Castile had a legal obligation to the children and should have been concerned with their care, custody, and control.

As for Castile's claims that the allegations in the charging informations were insufficient to inform her of the charges against her, we note that Indiana Code section 35-34-1-2(d) provides that

> The indictment or information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It need not contain a formal commencement, a formal conclusion, or any other matter not necessary to the statement. Presumptions of law and matters of which judicial notice is taken need not be stated.

Additionally, this Court has observed that if "an information tracks the language of the statute defining the offense, the information is sufficient." <u>Springer</u>, 585 N.E.2d 27, 30-

10

31 (Ind. Ct. App. 1992). In <u>Springer</u> it was held that the following indictment was sufficient:

> [Springer] having the care of a dependent, whether assumed voluntarily or because of a legal obligation, knowingly or intentionally placed the dependent, to-wit: Willard Flory, in a situation that endangered his life or health, thereby committing Neglect of a Dependent, a Class D Felony, contrary to the form of the statute as set forth in I.C. 35-46-1-4(a)(1) and against the peace and dignity of the State of Indiana.

<u>Id.</u>

In the instant case, the informations charging Castile with committing the offenses were very similar to that set forth in <u>Springer</u>. The counts against her provided that:

> On or about August 2008, to the 4th day of November, 2011, in St. Joseph County, State of Indiana, DELLIA CASTILE, having the care, custody and control of a dependent, named [Te.] (age 14), did knowingly place him in a situation endangering his life or health, and that resulted in serious bodily injury to [Te.] (age 14). All of which are contrary to the form of the statute in such cases made and provided, to-wit: Indiana Code 35-46-1-4(b), and against the peace and dignity of the State of Indiana.

Appellant's App. p. 376-77.[3]

The charging information here tracked the language of the statute and was, therefore, sufficient. <u>Springer</u>, 585 N.E.2d at 30. Additionally, there was language in the probable cause affidavit alleging that Castile frequently treated the victims' wounds and did not contact law enforcement officials or the DCS to protect the victims from Sturgis. The State also alleged that Castile knew that the victims were being beaten and she attempted to "cover" for Sturgis. Appellant's App. p. 380-81.

---

[3] Counts II and III contained the same information as above but named the other two victims, Tram. and Ter. Also, the information in Count II alleged the resulting death of Tram.

Finally, Castile complains that the charging documents failed to provide her with sufficient particularity to prepare a defense. More particularly, Castile argues that the dates and places alleged were not specific enough to sufficiently inform her of the charges. However, this Court in Kerlin v. State determined that "[a]bsence of detail in [a charging] information is fatal only if the phraseology misleads the defendant or fails to give him notice of the charges against him." 573 N.E.2d 445, 448 (Ind. Ct. App. 1991). It has also been held that "even where a charging instrument may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges. . . ." State v. Laker, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010).

In this case, it was alleged that Sturgis's abuse and the neglect that Castile committed occurred over a period of time that began on or about August 2008 and continued through November 4, 2011. In other words, it was not a "one-time" event. Appellant's App. p. 376-77. According to the charging documents and affidavits, Castile cared for the boys' wounds without seeking medical help and she knew that Sturgis was beating the victims. However, Castile never informed law enforcement officials or the DCS of the abuse. Tr. p. 8-9. As a result, we cannot say that the dates listed in the charging information misled Castile or failed to provide her with sufficient notice of the charges.

Finally, the supplemental affidavit in support of probable cause contains specific information of the victims' injuries, their living arrangements, the abuse that took place

12

during the entire time that the victims lived with Castile, and the victims' assertions that Castile knew of the abuse. It was further alleged that Castile cared for the children when Sturgis was gone, that on three separate occasions law enforcement or the DCS investigated complaints of abuse, and that Castile had never reported to either agency that the victims were being abused. Appellant's App. p. 379-81.

When considering these circumstances, we conclude that the charging information sufficiently informed Castile of the charges against her. Moreover, the supplemental affidavit in support of probable cause was more than sufficient to notify Castile of the facts surrounding the charge that enabled her to prepare a defense to the charges against her. Thus, the trial court properly denied Castile's motion to dismiss.

## II. Sufficiency of the Evidence

Castile next claims that the evidence was insufficient to support her convictions. Specifically, Castile argues that her convictions must be set aside because the evidence failed to establish that the children were in her care. She also alleges that the State failed to prove that she placed the children in a situation that endangered their lives or health.

When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn therefrom that support the verdict. Id. We will affirm a conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. Gray v. State, 957 N.E.2d 171, 174 (Ind. 2011).

13

As set forth above, the statute regarding the crimes with which Castile was charged provides that "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally . . . places the dependent in a situation that endangers the dependent's life or health commits neglect of a dependent, a class B felony if it results in serious bodily injury." However, the offense is a Class A felony "if it is committed by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age." I.C. § 35-46-1-4. The question of whether or not an individual is the defendant's dependent is a question of fact for the jury. Springer, 585 N.E.2d at 30. And issues concerning whether a defendant placed a victim in a situation endangering his life or health are also questions of fact. Kerlin, 573 N.E.2d at 448.

In Dowler v. State, our Supreme Court determined that the defendant had voluntarily assumed the care of the victim despite testimony by the victim's father that the defendant did not have the care of the child. 547 N.E.2d 1069, 1072 (Ind. 1989). More particularly, it was determined that "the statute does not limit its coverage to those acting only with authority or permission but provides one having the care of a dependent whether assumed voluntarily or because of legal observation." Id. In support of its finding that there was sufficient evidence that the defendant had cared for the victim, there was testimony that the defendant had assumed responsibility for the child's care, sometimes alone and sometimes jointly with another individual. Id.

14

In this case, the evidence established that the residence where the children lived was owned by Castile, and the boys were often under her sole control because Sturgis was frequently gone. Also, even when caring for the boys was not Castile's sole responsibility, they would play with their cousins in the house and outside in the yard. Tr. p. 891-92, 895. Castile was often present during these activities. Id. at 675-76, 785. 894.

Additionally, as discussed above, in the mornings before school, Castile would talk with the children and make sure that they had everything they needed for the day. Tr. p. 680. When the boys came home from school, they were in Castile's care and she would talk to them about any problems that might have occurred that day. Castile would then decide what issues, if any, that needed to be shared with Sturgis. Id. at 680-81.

Te.'s school principal testified that Castile had spoken with her about all of the boys. Furthermore, when a disciplinary matter occurred that involved Te., Castile talked with the principal about the incident. Castile came to the school regarding problems with the children. Id. at 625-26, 628.

Similarly, at the Madison County Primary Center (the Center) that Tram. and Ter. attended, school employee Sandra Matuszak had regular contact with Castile concerning the children as well as their cousin who also lived with them and attended the Center. Id. at 852-53. If any of the boys were ill or had to be dismissed early, Castile would pick them up. Id. at 852. Additionally, after Sturgis had beaten the children, Castile would often treat their injuries. Id. at 899.

15

In light of the foregoing, the evidence established that Castile assumed responsibility for the children's care, sometimes alone and sometimes jointly with Sturgis. As a result, Castile's insufficiency of the evidence claim fails on this basis.

Finally, Castile contends that her convictions must be set aside because the evidence failed to establish that she placed the children in a situation that endangered their lives or health. In support of this contention, Castile directs us to Fisher v. State, where a panel of this Court held that the defendant, who permitted the mother and child to stay at his residence and was aware that the mother was abusing the child did not place the child in dangerous situations as required to support a conviction for neglect of a dependent, even though the defendant had voluntarily assumed the care of the child. 548 N.E.2d 1177, 1179-80 (Ind. Ct. App. 1990). More particularly, it was determined that the defendant's failure to notify authorities that the mother was abusing the child did not constitute neglect because the defendant did not place the child in that situation and he did not have the authority to separate the child from the mother. Id.

Notwithstanding the outcome in Fisher, we find the rationale in Dowler instructive and persuasive, where it was observed that the defendant's awareness of the abuse of a child in the person's care and failing to do anything about it amounted to neglect. See Dowler, 547 N.E.2d at 1072 (holding that the evidence was more than sufficient where there was testimony that during the times the defendant cared for the child, he either visited violence upon the victim "or observed [another individual] doing it").

16

In this case, the evidence demonstrated that Castile placed the children in danger and in a position to be abused by Sturgis by deciding which activities involving the boys would be shared with Sturgis while knowing that Sturgis would mercilessly beat the boys for any perceived wrong-doing. Castile also actively thwarted investigations about the incidents by telling DCS authorities and law enforcement officials that none of the children were being inappropriately disciplined or abused. Tr. p. 872, 876-78.

In short, the evidence established that Castile did not simply fail to report Sturgis's abuse. Rather, she actively facilitated it. As a result, we conclude that the evidence was sufficient to support Castile's convictions.

### III. Sentencing

Finally, Castile argues that her sentence was inappropriate. Specifically, Castile claims that her sentence must be revised because she "should not have been punished for the crimes of her son and the failures of the system to detect abuse." Appellant's Br. p. 19.

Pursuant to Indiana Appellate Rule 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007)). The defendant has the burden of persuading us that his sentence is inappropriate. Id. (citing Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)). Ultimately, the principal role of

17

our review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve the "correct" result in each case. Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008).

As noted above, the trial court sentenced Castile to an aggregate fifty-year term of imprisonment after being found guilty of the charged offenses. Castile was sentenced to the advisory term of incarceration on all three counts that were ordered to run consecutively to each other.[4]

With regard to the nature of the offenses, the record established that Castile continually placed the boys in a position to be abused by Sturgis despite her knowledge of his brutal conduct. Tr. p. 681-86, 689, 705, 710, 788-89. As discussed above, Castile also thwarted efforts by law enforcement personnel and DCS representatives to determine whether the children were being abused. Thus, Castile subjected the boys to Sturgis's continuing attacks that resulted in devastating injuries to them and the eventual death of Tram. The torture that the children endured was horrific as evidenced by the numerous injuries they suffered over a prolonged period of time.

As for Castile's character, the evidence established that she is no stranger to the criminal justice system. More specifically, Castile was previously convicted in Illinois

---

[4] The sentencing range for a class B felony is from six to twenty years, with an advisory term of ten years. Ind. Code § 35-50-2-5. The range for a class A felony is from twenty to fifty years with an advisory term of thirty years. I.C. § 35-50-2-4.

for the felony offense of aggravated battery in 1992 and sentenced to five years in prison. PSI at 4.

After due consideration, we cannot say that Castile's fifty-year aggregate sentence is inappropriate in light of the nature of the offenses and her character. Thus, we decline to revise her sentence.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.